[PHILADELPHIA, JANUARY, 7th, 1837.]

## THE COMMONWEALTH *against* M'GINNIS and Others.

### CERTIORARI.

1. The act of the 16th of June, 1836, "relating to the jurisdiction and powers of the courts," did not repeal the 7th section of the act of the 18th of April, 1791, regulating the removal of indictments into the Supreme Court.
2. A special *allocatur* is therefore necessary to authorise such a removal.
3. The writ of *certiorari* is the proper mode of removing an indictment into the Supreme Court.

SEVERAL writs of *certiorari* having been issued, to remove to this court certain criminal causes depending in the Court of Quarter Sessions for the County of Philadelphia, the Mayor's Court for the City of Philadelphia, and the Recorder's Court for the Northern Liberties, Mr. *Todd*, the Attorney General, obtained a rule to show cause why the writs should not be quashed: 1st. Because there was no special *allocatur*. 2d. On the ground that a *certiorari* did not lie in such cases; the proper remedy being by *habeas corpus*.

Mr. *Doran* and Mr. *Phillips*, showed cause. On the first point, they admitted that by the act of 1791, a special *allocatur* was made necessary in all cases, to remove an indictment to this Court, but they contended that the provision was, in fact, repealed. The commissioners appointed to revise the acts of assembly, in the performance of their duties reported a bill entitled " An act relating to the jurisdiction and powers of the courts," in which among other things, they inserted a provision similar to that of the act of 1791, requiring a special *allocatur*. When the bill came before the legislature the provision was struck out by that body; and the act was passed on the 16th of June, 1836, without the proviso. This being an affirmative statute, it of course repeals all preceding ones upon the same subject, independently of the argument to be derived from the omission of the proviso. Upon this point were cited, *Constitution of Pennsylvania*, art. v. sec. 5; act of the 20th of March, 1799; 6 *Bac. Abr.* 372, tit. Statutes; 4 Inst. 43; 1 *Show.* 520; 4 *Burr.* 2026; 4 *Binn.* 424; 2 *Smith's Laws*, 470; 3 *Smith's Laws*, 90.

2d. The act of 1791 expressly requires the removal to be by *certiorari*, which it is settled in many cases, is the only method of removing an indictment. 1 *Chitty's Crim. Law*, 139, 375-6; 1 *Watts*, 308; 1 *Ashmead*, 10.

The opinion of the Court was delivered by

Sergeant J.—The modes in which repeals of statutes take place are various. Sometimes it is done by an enacting clause, referring to the title or date of the former statute, or to the section or clause which is meant to be abrogated. Sometimes the latter statute supplies a new code, and there is a repealing clause of a qualified description, affecting only so much of former statutes as is thereby altered or supplied, leaving the determination of the extent of the repeal, to the construction of the courts. This last method has been pursued by the legislature in several of the recent acts establishing new codes. In the act of assembly of the 16th of June, 1836, and some others, neither of these is to be found; there is no express repeal of former acts by date or title, nor is there even a clause of a qualified description. Another kind of repeal is by implication or construction, and this takes place when the legislative body enacts a statute affirmatively, which is so repugnant to, and inconsistent with a former act on the subject, that both cannot stand together: in that case, the latter statute prevails over the former, according to the maxim *quod posteriores leges priores contrarias abrogant.* This last, however, being a repeal by construction, created by the courts under a presumed intention in the lawgivers not appearing on the face of their enactments, great caution has always been used in its exercise, least under the idea of interpreting laws, the judiciary should annul them, when that is not the design of the legislature. Forasmuch, says Lord Coke, as acts of parliament are established with such gravity, wisdom, and consent of the whole realm, for the advancement of the commonwealth, they ought not, by any constrained construction out of the general and ambiguous words of a subsequent act, to be abrogated, but ought to be maintained and supported with a benign and favourable interpretation. *Foster's case,* (11 *Rep.* 63.) When there are two statutes, says Dyer, the one in appearance crossing the other, and no clause of *non obstante* is contained in the second statute, so that one may stand with the other, the exposition ought to be that both should stand in force. *Dy.* 347, b. A later act of parliament has never been construed to repeal a prior act, unless there be a contrariety or repugnancy in them, or at least some notice taken of the former act, so as to indicate an intention to repeal it. The law does not favour a repeal by implication, unless the repugnance be quite plain; such repeal carrying with it a reflection on the wisdom of former parliaments, it has ever been confined to repealing as little as possible of the preceding statutes. The same view has been taken where powers under several acts are such as may well subsist together. A subsequent act which can be reconciled with a former act, is not a repeal of it, though there be negative words, as in *Foster's case*: the 1 and 2 Ph. & M. c. 10, enacting that all trials for treason should be according to the course of the

common law, and not otherwise, was held not to repeal the 35 Hen. 8, for trial of treason beyond sea. *Dwarris on Stat.* 674.

On these established rules of construction, without looking further, I should be strongly inclined to think that the affirmative clause in the 8th section of the act of 1836, that all the writs should be granted of course, without any repealing clause whatever in the act, is not a repeal of the act of 13th April, 1791, regulating the terms on which a *certiorari* or writ of error should issue to remove an indictment in the criminal courts; for the act of 1836 is only an act relative to the jurisdiction and powers of courts, and does not attempt to provide a code to regulate the manner in which the jurisdiction is to be exercised. It is passed *diverso intuitu;* it does not supply the provisions of former acts; it may have its full operation and effect, and yet the former acts subsist well with it, and all be reconciled together; and this construction would leave the law such as it has been from the earliest settlement of the state, and no contrariety or repugnance has ever been supposed to exist between its different parts.

But if we consider for a moment some of the consequences that would result from this court's sanctioning the defendant's construction, it will be difficult to believe that it could have been the intention of the legislature to produce these results. On that construction, writs of *certiorari,* writs of error, and all other writs and process may be issued out of this court, at the will of either party, to bring up all and every proceeding whatever, civil as well as criminal, depending before inferior tribunals, freed from the regulations hitherto imposed by the acts of assembly. Any and every indictment may be removed by *certiorari* at the will of the defendant, for trial in this court, and the criminal courts stripped of their business to accumulate it here. Suits before justices might be brought up here also by *certiorari,* notwithstanding the act of 20th March, 1810, forbidding it: suits in the District Court may be removed here by *certiorari* or habeas corpus for trial in all cases; nor do I perceive what is to prevent causes pending in other counties from being removed here, and parties drawn from the remotest parts of the state; for this is only prohibited by the act of 11th March, 1809. Writs of error might issue in every case criminal or civil, and be a stay of execution without recognizance, and without waiting the times prescribed by several acts of assembly. A *habeas corpus* might be issued without view of the warrant of detainer or oath, as required by the *habeas corpus* act. These are but a portion of the consequences that would result—consequences the most injurious to the community, and productive of a delay and hindrance of justice, to an incalculable extent. It should require very plain and express language in an act, to induce a belief that the legislature intended to produce these effects. It ought not to be inferred from loose and general expressions, introduced into an act passed for another purpose.

I am also of opinion, that there is in the first section of the act of 1836, language sufficient to save all existing regulations as to the terms and manner of issuing writs out of. this Court, for the removal of suits and causes from other courts. The first section provides, that " the Supreme Court of this commonwealth shall have power to hear and determine all, and all manner of pleas, plaints, and causes, which shall. be brought or removed there from any other court of this commonwealth, by virtue of any writ or process issued by the said courts, or any judge thereof, for that purpose, *in manner now practised and allowed;* to examine and correct all and all manner of errors of the judges, magistrates and courts of this commonwealth in the process, proceedings," &c. This section gives the Court jurisdiction over causes removed here, only when they are removed in the manner now practised and allowed; and thus incorporates the existing laws regulating that subject.

The suggestion, that these words refer to the power of the Court to hear and determine, will, I think, on reflection appear to be untenable. The words would be inappropriate. The manner of hearing and determining is not usually a subject of legislation, but of rules of court and practice: and it would not be worth while to attempt to fix it in the first section, when by the 21st section of the act itself, the Courts are empowered to make rules of practice to expedite the determination of suits. In addition, it may be mentioned, that the language of this section, generally, is borrowed from the act of 1722; but these words, " in the manner now practised and allowed," are introduced *de novo.* Taking the whole act together, it reads thus—that the writs shall be granted, of course, in the manner now practised and allowed.

I am aware that there is an apparent inconsistency in saying, that a writ shall be granted of course; and yet subjecting it to terms and conditions. It is, however, the language employed by the legislature in former acts of assembly on the same subject: and according to settled rules of construction, the legislature itself is the best interpreter of its own phraseology; and statutes in *pari materia* are always to be taken into view, in explaining the language used. By the act of the 11th of March 1789, any person aggrieved by the judgment of the Mayor's Court of the City of Philadelphia, might " sue out and obtain his writ of error, which shall *be granted of course,* and made returnable in the Supreme Court of this commonwealth; and shall be proceeded in under the same rules and regulations." In *Commonwealth* v. *Profit,* (4 *Binn.* 424,) it was held by this Court, that under this act, the defendant was not entitled to a writ of error as a matter of course, (in the ordinary sense of those words); but must have a special allowance or consent for the purpose. The reason was, that as far back as 1722, the language of the act passed in that year was similar, " which shall be granted

(The Commonwealth *v.* M'Ginnis.)

of course in like manner as other writs of error are to be granted, and made returnable to the said Court;" and under this act, the general words had been qualified. So here, the words in the 8th section of the act of 1836, "shall be granted of course," are qualified by those in the first section, that they are to be in the manner now practised and allowed.

It is immaterial, that these words are in different sections; or which section stands first. "One part of a statute must be so construed by another, that the whole may, if possible, stand: *ut res magis valeat quam pereat:* for this interpretation furnishes matter for every clause of the statute to work and operate upon." 1 *Bl. Com.* 89; and see 1 *Kent's Com.* 462. *Co. Lit.* 381, *a.* I do not, therefore, agree that the 8th section repeals the first. Even where the maxim, that an affirmative statute repeals a prior affirmative one, applies to statutes passed at a former session, it has still less force upon an act passed at the same session; for, (says HEATH, J. 1 *Bos. & P.* 188, commenting on the case in 4 *Burr.* 2026, cited here by the defendant's counsel,) "there the statutes, by which the former were held to be repealed, were passed in subsequent sessions. When both statutes are passed at the same session, the latter is only explanatory." And different sections in the same statute ought to be considered as explanatory of each other, if they can be so construed, whatever may be their position in the text.

According to these views of the case, this act does not, by implication, repeal the act of 1791; but expressly recognises and preserves it: and, taking the whole into view, continues the system which has subsisted in this commonwealth since the year 1722, when the original act was passed, organizing the Supreme and other Courts of the province on the model they have since, for the most part, retained. That system has always subsisted; at first, by the common law, and the act of 1722, and then by the act of 1791, passed immediately after the adoption of the Constitution. It was designed to prevent the abuse of writs of *certiorari* and writs of error in criminal cases, by the removal, at the defendant's instance, of the ordinary cases at the sessions, into this Court, merely for the purpose of delay. When such removal is requisite for the due administration of justice, an allowance by one of the Judges of this Court is grantable to the defendant of right, and *ex debito justitiæ;* and no judge of this Court can refuse it. As where there is just reason to apprehend, that the Court below may be unreasonably prejudiced against the defendant: or there is a difficulty in the case, and the judge below desires it may be determined in the higher court; or wherever other good and sufficient reason exists for the removal. Under these rules, by an allowance of one of the judges, or by consent of the attorney-general, criminal cases have been removed here for trial or supervision.

(The Commonwealth *v.* M'Ginnis.)

That a *certiorari* is the proper mode of making such removal, there is no doubt. It is prescribed by the act of 1791; and has been the constant practice.

*Certiorari* quashed.