EASTERN DISTRICT, PHILADELPHIA, 1854.

## Commonwealth *versus* Simpson et al.

1. The Supreme Court has authority to remove, for the purpose of trial, cases pending and undetermined in the courts of criminal jurisdiction for the city of Philadelphia.

2. The writ of *certiorari* is the appropriate writ for the removal of a cause *before* judgment, and the writ of *error* is the writ which removes it afterwards.

3. By the regular course of proceeding, criminal cases pending in the Supreme Court, ought to be brought to issue before the process issues to summon jurors to try them.

4. The power to render judgment and award execution, involves in it the power to take the preliminary steps which lead to that result.

5. The removal of a criminal case from the courts of Philadelphia to the Supreme Court, for trial, can take place only where specially allowed by the judges of the Supreme Court, or one of them.

6. Where there is an irregularity in the issuing of the writ, the parties may waive objection to it, by going to trial or putting the case down for trial, or by any other proceeding in the Supreme Court which acknowledges by implication that the cause is regularly there.

7. After a trial on the merits and an acquittal, it is too late to quash the writ of removal for any other cause than a want of jurisdiction in the tribunal that issued it.

RULE to show cause why the writ of *certiorari*, removing this case from the courts of criminal jurisdiction for the city and county of Philadelphia, should not be quashed.

[Commonwealth v. Simpson et al.]

*W. L. Hirst*, for Commonwealth.

———, for defendant.

The facts of the case sufficiently appear in the opinion of the court, delivered by

· LEWIS, C. J.—This motion raises the question, whether the Supreme Court has authority to remove, for the purpose of trial, the cases pending and undetermined in the courts of criminal jurisdiction of the city of Philadelphia. The Act of 22d May, 1722, (1 Smith's Laws, 140,) established the Supreme Court, and clothed it with power ·"to *hear* and *determine*, all and all manner of pleas, plaints, and causes which shall be *removed* and *brought there*, from the respective *General Quarter Sessions of the Peace*, Courts of Common Pleas," "or from any other courts of this province;" to examine and correct "all manner of errors," in the judgments of the subordinate courts of the province, as well in "*pleas of the crown*, as in pleas real, personal, and mixed;" and "generally to minister justice to all persons, and to exercise the jurisdictions and powers hereby granted, concerning all and singular the premises, according to law, as fully and amply, to all intents and purposes whatsoever, as the justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster, or any of them, may or can do." The jurisdiction and powers granted by the act, were ample and complete in all cases, *criminal* as well as civil, and *criminal* cases *removed from the other courts*, were especially mentioned in the statute. The powers necessary to the exercise of that jurisdiction, as expressly granted by the act, were as full and perfect as those exercised by all or any of the superior courts of justice in England. The power "to hear and determine," is an essential ingredient of *original* jurisdiction, and the authority "to examine and correct errors," is the distinguishing characteristic of *appellate* power. To "hear and determine" a criminal case, is "to proceed after bill found, and to try the issues of fact and pass sentence." 4 Bl. Com. 270. The power of the King's Bench in England, to remove criminal causes from other courts, and to try the issues in banc or at Nisi Prius, is well settled. 1 Chit. Crim. Law, 141, 142. It is equally well established, that under the Statute of 14 Henry VI., c. 1, the judges at *Nisi Prius*, after a verdict of guilty, may either pass sentence and award execution, or return the *postea* into the King's Bench, that judgment may be given there. 1 Chit. Crim. Law, 142; 4 Maule & Selwyn, 447. It follows, that under the express provisions of the Act of 1722, the judges of the Supreme Court of this State, may pursue the same course. · It remains to inquire, whether the jurisdiction given by that Act, has been

taken away by subsequent legislation. In considering this question, we must not forget the principle of construction, that "the law does not favor a repeal of a statute by implication, unless the repugnance be quite plain." "A subsequent act, which can be reconciled with a former one, is not a repeal of it, though there be negative words." *Commonwealth* v. *M'Ginnis*, 2 Wharton, 114. We must also bear in mind another principle, equally well supported by practice and authority, "the jurisdiction of the Supreme Court cannot be taken away, except by express words or necessary implication." *Overseers of Poor* v. *Smith*, 2 S. & R. 366. In the various alterations which have taken place in our ordinary and fundamental laws, neither express words nor necessary implication can be found, tending to take away the jurisdiction thus clearly conferred by the Act of 1722. On the contrary, the acts of ordinary legislation, as well as the constitutional provisions since that period, tend to confirm the jurisdiction. The Act of 27th of March, 1789, § 2, (2 Smith's Laws, 484,) expressly provides for the trial at *Nisi Prius*, before any *one* or *more* of the judges of the Supreme Court, of "all such issues in fact, as are, or shall be depending in the Supreme Court, in pleas, either *civil* or *criminal, originally instituted* in the Supreme Court, or *brought thither by writs of removal*, appeals, or otherwise, from any civil or *criminal jurisdiction* in the city or county of Philadelphia, already erected, or *hereafter to be erected*." The Constitution of 1790, recognized and confirmed this jurisdiction, by the emphatic declaration, that "the party accused, as well as the Commonwealth, may, under such regulations as shall be prescribed by law, remove the indictment or proceedings, or a transcript thereof, into the Supreme Court." The amended Constitution of 1838, contains the same clause. The Act of 13th of April, 1791, (3 Smith's Laws, 30,) declares, that whenever any person shall be indicted, in any court of Oyer and Terminer, Gaol Delivery, or Sessions of the Peace, *the party charged shall be* at liberty to remove the indictment and all proceedings thereupon, or a transcript thereof, into the Supreme Court, by writ of *certiorari*, or by *writ of error*, as the case may require." The writ of *certiorari* is the appropriate writ for the removal of a cause *before* judgment, and the writ of *error* is the writ which removes it afterwards. Here is a distinct recognition of the original, as well as the appellate jurisdiction over criminal cases, with the right of removal, indispensable to the exercise of this paramount jurisdiction. There are other provisions, requiring the allowance of the writ by the Supreme Court, or one of the justices thereof, or the consent of the attorney-general, to make it effective. Under these statutory and constitutional provisions, the jurisdiction has been constantly

[Commonwealth *v.* Simpson et al.]

exercised, and the removal of causes by *certiorari*, "practised and allowed" without objection.   It is true, that there has been no direct decision upon the question, but this is because the jurisdiction was so clearly given, that notwithstanding the numerous instances, in which it has been exercised for more than a century, and the motives which must frequently have existed for raising the objection, we believe, that this is the first time that the jurisdiction has been directly drawn in question.   The books and records are full of cases, to show that the jurisdiction was "practised and allowed," up to the year 1836.   The Act of 16th of June, 1836, (P. L. 784,) expressly confirms it, "in the manner then practised and allowed."   The first section of that act, embodies in it every substantial provision, contained in the thirteenth section of the Act of 22d of May, 1722, and expressly recognizes and confirms the jurisdiction, as conferred by that act, in *criminal* as well as *civil* cases, "as fully and amply, to all intents and purposes, as the said Court has heretofore had power to do, under the Constitution and laws of this Commonwealth."   The right of removal was also fully recognized in the ninth section of the Act of 1836.   Whatever doubts may have been entertained, by those whose attention had not been particularly called to the subject, it must be confessed that they have been entirely removed by a careful examination of the various Acts of Assembly, the constitutional provisions, and the numerous cases in which this power has been exercised. The jurisdiction, up to the enactment of 26th of July, 1842, has, indeed, been scarcely denied.   Is it taken away by that act?   We think not.   There are no express words in it, repealing former laws, relative to the criminal jurisdiction of the court, nor is there any repugnancy which works a repeal by implication.   It is apparent from the express words of the act, as well as from its general purpose, as indicated throughout all its provisions, that it applies exclusively to *actions*, and not to *indictments* to causes, brought into the court by *original* process, and not to those brought there by *writs of removal;* in short, to *civil suits*, and not to *criminal* prosecutions.   The criminal jurisdiction of the court, remains, therefore, untouched by the Act of 1842.

But it is said that there is a great inconvenience in the exercise of it.   This is true ; and the same may be said in reference to its original jurisdiction in *civil* cases.

The accumulation of business in the court in banc, and the necessary absence of the judges in the discharge of their duties in the other districts of the State, may produce delay.   But the efficiency of the district attorney in bringing the case of Simpson to trial, shows, that by proper attention to the Commonwealth's interests, the difficulties of the jurisdiction may be

[Commonwealth *v.* Simpson et al.]

readily overcome. Be that as it may, this suggestion furnishes no reason for denying the existence of a power, coeval with the establishment of the court, and resting upon the impregnable foundations of constitutional and legislative enactments. It proves, however, that there are good reasons for the utmost caution and discretion in its exercise.

It is said that there is no provision for the drawing and summoning jurors for the trial of issues in criminal cases, removed to the Supreme Court. This a mistake. The Act of 14th April, 1836, relative to the organization of courts of justice, expressly declares that the Supreme Court shall award process "for the trial of all issues in fact, in all pleas, civil and *criminal*, depending in the said court, returnable during the sitting of the said court at *Nisi Prius*."

As soon as issues are joined, in criminal cases pending in the Supreme Court, and the attorney for the Commonwealth desires to proceed to the trial of them, he may move the court for process to summon jurors for the purpose, and the motion will, of course, be granted. By the regular course of proceeding, criminal cases pending in the Supreme Court, ought to be brought to issue before the process issues to summon jurors to try them. It would be improper to put the public to the expense of summoning jurors to determine criminal issues, if, in fact, no such issues are joined when the process is demanded. But if jurors are summoned for the purpose, and other criminal cases pending in the court can be heard and determined at the same period of the *Nisi Prius*, public convenience requires that they should be disposed of. The power to render judgment and award execution, involves in it the power to take the preliminary steps which lead to that result. And since it has been shown that a sentence may be passed at Nisi Prius, it seems to follow that a defendant in a criminal case may be there arraigned, and compelled to plead. By adopting this construction, we assimilate the practice to that which now prevails in civil cases, and we facilitate the administration of criminal justice.

It is alleged that some of the causes enumerated in the motion have been removed without an allowance of the writ by the court, or by any judge thereof. They were removed with the consent of the attorney-general. The view we take of the cases before us, renders it unnecessary to determine the question whether, under the law providing for the election of district-attorney, the supervision of the attorney-general is taken away. We have seen that the Constitution declares, that the party accused, *as well* as the Commonwealth, "shall have the right of removal, under such regulations as shall be prescribed by law." We are inclined to believe that the true intention of this provision was

[Commonwealth *v.* Simpson et al.]

to place both parties upon an equal footing in the courts of justice.

It is true, that prerogative is in many cases necessary to the beneficial exercise of sovereignty, and accordingly the State, in a law-suit with one of her citizens, has the privilege of sitting in judgment on the case, through the instrumentality of judges selected by herself. But when she condescends to disrobe herself of sovereignty, and to become a party to a law-suit, under regulations which, in terms, embrace both parties, there is no reason why her attorney-at-law, who represents her only in her capacity of a suitor, and possesses no portion of the sovereign power, should be regarded as clothed with privileges not enjoyed by the other party. In courts of justice, the general principle is, that all parties stand on an equal footing. And it consists not with the spirit of our free institutions, that the State herself should unnecessarily disregard the principle. Her acts, like those of a lord of a manor in reference to his villein, should be benignly construed in advancement of liberty and equality. According to this principle, the "regulations" required by the Constitution to be prescribed by law, "for the removal of indictments," should have been construed to mean such as operated equally on both parties. It must be admitted that neither the legislation nor the practice has been in accordance with this principle. It is not our intention to overrule the cases already decided. But the special provision for the removal of causes in Philadelphia, is peculiar in its terms, and according to its letter, operates alike upon both parties. Writs of *certiorari* and writs of error, may be issued from the Supreme Court, to remove the proceedings from the criminal courts " of the city and county of Philadelphia," "*in all cases where specially allowed by any of the judges of said Supreme Court.*" Act of 8th February, 1848, § 4, P. L. 26. There is no exception in favor of cases removed by the attorney-general, or with his consent, and we cannot interpolate the statute, or construe it in connection with other statutes where this provision is to be found, without giving the Commonwealth an advantage over her citizens not contemplated by the Constitution. This leads us to adopt the construction, that the removal of a criminal case from the courts of Philadelphia, cannot be made by the attorney-general, nor by the district-attorney, nor with the consent of either of them; but "*in all cases*" there pending, the removal can take place only when specially allowed by the judges of the Supreme Court, or one of them.

But there is a difference between the question of *jurisdiction* and that which relates to the *mode* of *removal*. The one is not affected by consent or acquiescence, and the other is. Where there is an irregularity in the issuing of the writ, the parties

[Commonwealth *v.* Simpson et al.]

may waive objection to it by going to trial, or putting the case down for trial, or by any other proceeding in the Supreme Court which acknowledges, by implication, that the cause is regularly there.

In Simpson's case, after a trial on the merits, and an acquittal by a jury, it is certainly too late to quash the writ of removal, for any other cause than a want of jurisdiction in the tribunal that issued it.   It is also too late to affect the accessories charged in the same indictment, after putting their cases down for trial, and after the trial and acquittal of the principals.   There are other cases which have been removed by consent of the attorney-general, without a special allowance by the court or a judge, but the facts in those cases have not been fully laid before us, and we are unable to say whether the objection has been waived or not.   We leave them to be determined hereafter, according to the circumstances of each case.

The delays in the administration of criminal justice which have been brought to our notice in the discussion of this motion, suggest the propriety of some rules of practice, which we have prepared, and which the prothonotary will enter of record, as having been this day adopted by the court.

The rule for quashing the writs of *certiorari*, in the cases enumerated in the present motion, is discharged.

BLACK, J.—I regret that after a full consideration of this case, and a careful scrutiny of the reasons given by the chief justice, for discharging the rule, I am compelled to concur with him.   I am still more sorry that the other members of the court have been forced to the same conclusion.   It is clear that we have the power of bringing criminal cases into this court, for trial, by *certiorari*, but we ought *not* to have it.   It has never yet been exercised for the punishment of offenders, but it has often had the effect of screening them from justice.   Of the numerous removals which have been made in fifty years, not one has resulted in a conviction ; and nine out of ten have never been tried.   The authority to arrest the course of justice, by sending the most atrocious criminals into a forum where, judging by the past, they are nearly sure to escape, should not be given to any man.   We can trust ourselves to exert it sparingly and judiciously, but we will not be here forever ; and while we are here, the less discretion we have in such matters, the better. I make these remarks in the hope of calling to the subject, the attention of that department of the government which alone can give a remedy, for what I am sure is a great evil.