[Commonwealth v. Frowenfield et al.]

# Commonwealth *versus* Frowenfield et al.

1. The Supreme Court may order Courts of NISI PRIUS for the trial of criminal cases in the proper counties, and award venires for summoning jurors, and make such other orders as are necessary for the trial of the cases.

CERTIORARI to the Court of Quarter Sessions of *Alleghany County.*

This was an indictment founded on a presentment of the *Grand Jury* against defendants for a conspiracy to defraud the commonwealth out of large sums of money in relation to contracts for clothing furnished for the army.

The defendants, after refusal of an application for a continuance, applied by petition, accompanied by affidavits and certificate of counsel, to Chief Justice LOWRIE, of the Supreme Court, for the allowance of a certiorari, for the removal of said indictment and all proceedings under it into the Supreme Court, that the defendants may be there tried, &c. A special allocatur, as prayed for, was granted, making the writ returnable on the fourth Monday of July, and ordering that on the 24th inst., at the meeting of the court at Philadelphia, and after ten days' notice to the district attorney, the defendants apply to the court for such orders for a *venire* and for the hearing of the cause as may be proper. The writ was issued and presented in the Quarter Sessions just as the case was called for trial, and proceedings were of course stayed.

A rule, obtained by the district attorney on defendants, to show cause why the allowance of the writ should not be withdrawn and set aside, was argued before the Chief Justice and discharged; and it was then further ordered that defendants immediately plead to issue in the Quarter Sessions, and enter into recognizance there, with sufficient sureties, conditioned for their appearance before the Supreme Court, or some judge thereof, at Nisi Prius, at Pittsburg, at such time as the said court shall appoint, to answer to the indictment, &c.

The commonweath's counsel contended that outside of the city of Philadelphia the Supreme Court cannot by law, either in Banc or at Nisi Prius, try any case, civil or criminal, requiring the intervention of a jury, and they therefore notified defendants' counsel of their intention to move the court, at Philadelphia, on the 24th July, 1861, to quash the certiorari and proceedings thereon, and order the record to be certified back to the Quarter Sessions.

The rule to show cause why the allowance of the certiorari

should not be withdrawn and set aside was discharged after argument on the 24th inst., before the court in banc at Philadelphia.    No opinion was filed, but the following order made :

*Per curiam.*—"July 25, 1861.    The motion to quash the writ of certiorari is overruled, and it is now here ordered that a court of *Nisi Prius* be held at Pittsburg, by the Chief Justice of this court, or any one or more of the justices of this court, for the trial of the said case, that a venire issue immediately for the summoning of thirty-six jurors for the trial thereof, directed to the sheriff of Alleghany County, and returnable on the first Monday of September next, and that the court commence on the Friday preceding the said date so as to give the parties an opportunity of making any motions that may be needed preparatory to the said trial."

*J. H. Miller, M. Swartzwelder* and *John H. Hampton,* for the commonwealth.

*Charles Shaler, Samuel W. Black, Thos. M. Marshall, Kirkpatrick & Mellon, T. B. Hamilton, F. H. Collier,* and *F. Carroll Brewster,* for the defendants.

From this order of the court Justices READ and THOMPSON dissented, and Mr. Justice READ read the following dissenting opinion, in which Mr. Justice THOMPSON concurred :—

Dissenting opinion of

READ, J.—The Court of King's Bench is the principal court of criminal jurisdiction known to the laws of England, and, on the crown side, takes cognizance of all criminal causes, and into this court also all indictments from all inferior courts may, in certain cases, be removed by a writ of *certiorari,* and the manner of trial in this court is either at bar (which rarely happens) or at Nisi Prius, according to the course in a civil action, unless the court remands the record to the court below to be there tried and determined—and the rule was, although now modified by several acts of parliament, that by the coming of the Court of King's Bench into any county, all former commissions of *Oyer and Terminer and General Gaol Delivery* were at once absorbed and determined *ipso facto.*

There is also a species of collateral auxiliary courts, called the courts of Assize and *Nisi Prius,* composed of two or more commissioners, called judges of the Assize and *Nisi Prius,* who are, twice in every year, sent by special commission from the crown, on circuits all round the kingdom, to try by a jury of the respective counties the truth of such matters of fact as are then under dispute, in the Courts of Westminster Hall.    The judges on their circuits sit by virtue of five several commis-

sions—1. The commission of the peace. 2. A commission of *Oyer and Terminer*. 3. A commission of *General Gaol Delivery*. 4. A commission of *Assize*, directed to the justices and sergeants therein named, which the abolition of assizes and other real actions, Mr. Sergeant Stevens says, has thrown out of force, as distinguished from the commission of Nisi Prius, which was the 5th commission, and is a consequence of the ancient commission of *Assize* being annexed to the office of justices of Assize, by the statute of Westminster the Second. 13 Edward I., c. 30.

An indictment, therefore, removed into the King's Bench, was tried at the bar of the court itself at Westminster, by a jury of the county from whence it came, or by the judges of Assize in that county at Nisi Prius.

In the early history of the province, under the charter of Charles the Second, the courts consisted of a county court, held quarterly in each county by the respective justices, and of a provincial court of five provincial judges, appointed by the Governor. All actions, civil and criminal, except treason, murder, and certain other high crimes, were to be first heard and tried in the proper county courts. The provincial court sat twice a year at Philadelphia, and at least two of the five judges, every fall and spring, yearly, went their circuit into each county, which circular courts had the hearing and determining of all appeals from the respective county courts, both in law and equity, which judges were also authorized, at the times and places aforesaid, to hear and determine treason, murder, and other high crimes, in all and every of the said respective counties. The hearing of appeals touching any judgment given in the province was reserved to the king by the charter.

In 1710, by an act for establishing courts of judicature in this province, the Supreme Court of Pennsylvania was constituted, consisting of a chief justice and three associates, who were to hold a court of record twice in every year, in every county in the province, with power to every of the said judges to issue forth writs of *habeas corpus, certiorari*, &c. The said judges or any two of them to have power to hold the said courts, and to hear and determine all causes removed from the other courts. Writs of *certiorari* are to be made returnable to the Supreme Court of the proper county, and the mode of granting the same in term time and vacation, for the removal of indictments, is specially regulated. The judges of the General Quarter Sessions of the Peace, and Gaol Delivery, in each county, who also held the county Court of Common Pleas, were authorized to minister common justice as near as conveniently may be to the laws of Great Britain, and according to the laws of this province, as fully and effectually as any justices

[Commonwealth *v.* Frowenfield et al.]

of Assize, justices of Oyer and Terminer, and of Gaol Delivery, or justices of the peace may or can do. But all treasons, murders or capital felonies were to be tried by commissioners of Oyer and Terminer and Gaol Delivery, especially named or constituted for that purpose by the Governor or Lieut. Governor for the time being, under the great seal, whenever there shall be occasion, with power to said commissioners to deliver the gaol of all persons committed for said crimes.

This act was repealed by the queen in council, on the 20th February, 1713, and in 1715 three acts were passed, embodying the principal provisions of the former act, and erecting a supreme or provincial court of law or equity, courts of common pleas, and ascertaining the practice of the courts ; all of which were repealed by the king in council on the 20th July, 1719.

The seventeenth section of the act of 31st May, 1718, recognizes the special commissions of Oyer and Terminer mentioned in the act of 1710. On the 22d May, 1722, the act for establishing courts of judicature in this province was passed, which was amended by a supplement, passed the 20th May, 1767. A chief justice and three associates constituted the Supreme Court, who were to hold a court of record twice a year in Philadelphia, and to go the circuit twice a year into the several counties, and they or any one of them were to try all issues of fact depending in said court, and removed out of any of the counties. · Each of the said judges had power to issue forth writs of *habeas corpus, certiorari,* and writs of error. Each issue was to be tried in the county from which it was removed, and the judges were authorized to do all those things necessary for the trial of any issue, as fully as the justices of *Nisi Prius* in England may or can do ; and the judges of the Supreme Court were authorized generally to administer justice to all persons, and exercise the jurisdictions and powers thereby granted, as fully and amply as the justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster, or any of them may or can do.

The said judges of the Supreme Court were also empowered to deliver the gaols of all persons committed for treason, murders, and capital felonies, and to issue forth such necessary precepts and process, and force obedience thereto, as justices of Assize, justices of Oyer and Terminer, and of Gaol Delivery may or can do in the realm of Great Britain.

The revolution having put an end to appeals to the King of Great Britain, the General Assembly of Pennsylvania, by an act of the 28th February, 1780, erected an High Court of Errors and Appeals, which was continued by the judiciary act of 1791, and was abolished in 1806, when the Supreme Court, for the first time, became the court of final resort in this State. The

[Commonwealth *v.* Frowenfield et al.]

Supreme Court exercised no original jurisdiction in civil actions until the act of 25th September, 1786, when this juris-diction was given by that act, which confined it to the county of Philadelphia. By the act of the 27th March, 1789, the justices of the Supreme Court in term time, or a majority of them in vacation, are enjoined to hold Courts of Nisi Prius in the city of Philadelphia, for the city and county of Philadelphia, before them, or any one or more of them, for the trial of all issues in fact, in pleas, whether civil or criminal, originally instituted in the Supreme Court, or brought thither by writs of removal, appeal or otherwise, from any civil or criminal jurisdiction in the city and county of Philadelphia, already erected or thereafter to be erected.

By the fifth article of the Constitution of the 2d September, 1790, "The jurisdiction of the Supreme Court shall extend over the State, and the judges thereof shall, by virtue of their offices, be justices of Oyer and Terminer and General Gaol Delivery in the several counties, and the judges of the Courts of Common Pleas, who by virtue of their offices are justices of Oyer and Terminer and General Gaol Delivery for the trial of capital and other offenders, shall not hold such courts when the judges of the Supreme Court, or any of them, shall be sitting in such county;" which has been held to mean, when sitting as justices of Oyer and Terminer. The party accused, as well as the com-monwealth, may, under such regulations as shall be prescribed by law, remove the indictment and proceedings, or a transcript thereof, into the Supreme Court. By the fifteenth section of the ninth article, no commission of Oyer and Terminer or Gaol Delivery shall be issued.

By the act of the 13th April, 1791, the Supreme Court was esta-blished, with the same powers as theretofore, consistently with the provisions of the constitution, and the Courts of Nisi Prius were to be held at such intermediate times as the justices of the said court shall judge most convenient for the people. By the seventh section, "Whensoever any person shall be indicted in any court of Oyer and Terminer, Gaol Delivery, or Sessions of the Peace, the party charged shall be at liberty to remove the said indictment and proceedings thereupon, or a transcript thereof, into the Supreme Court, by a writ of *certiorari* or a writ of error, as the case may require: *Provided always*, That no such writ of *certiorari* or writ of error shall issue or be available to remove the said indictment and proceedings there-upon, or a transcript thereof, or to stay execution of the judg-ment thereupon rendered, unless the same shall be specially allowed by the Supreme Court, or one of the judges thereof, upon sufficient cause to it or him shown, or shall have been sued out, with the consent of the Attorney General, which

[Commonwealth *v.* Frowenfield et al.]

special allowance or consent shall be in writing, and certified on the said writ."

Courts of Nisi Prius were, therefore, held in every county in the commonwealth, both under the provincial and State governments, until the act of 20th March, 1799, to enable the justices of the Supreme Court to hold Circuit Courts, by the first section of which it was enacted, that instead of the Courts of Nisi Prius, as now held, a court, styled a Circuit Court, shall be held by the justices of the Supreme Court, or one or more of them, in the several counties of this commonwealth, except the county of Philadelphia, at such times and places as the said justices shall direct and appoint.    The said justices at Circuit Court to have power to issue writs of *certiorari, habeas corpus*, and other remedial writs, and to try any capital or other criminal case which shall have been removed into the said Circuit Court, in the manner which now *is, or* may hereafter be directed by law, though not sitting as a Court of Oyer and Terminer upon any indictment which may have been found at any county Court of Oyer and Terminer or Sessions of the Peace, and without any new indictment; and upon the removal of any such indictment in the manner directed by law, the same, with all the proceedings thereon, shall be transmitted and filed with the clerk of the Circuit Court, as in civil cases, that the said judges at their next Circuit Court may proceed thereon.    But nothing in this act contained was to be construed to prevent the said justices from holding Courts of Nisi Prius, and doing other business in the county of Philadelphia, as fully as if the act had not been made; but their power to issue writs of *certiorari* to the courts in any other counties except the county of Philadelphia, returnable into the Supreme Court, was wholly superseded.

By the act of the 24th February, 1806, no issues in fact in the Supreme Court shall be tried in banc, but all issues of fact then pending were to be tried at Nisi Prius in the city of Philadelphia, and one of the judges was authorized to hold sittings for the trials of issues of fact, in term time, with like powers as a judge at Nisi Prius.    By the nineteenth section, the Supreme Court had no original civil jurisdiction.    By the fifth section of the act of 11th March, 1809, the Circuit Courts were abolished, and the judges of the Supreme Court were forbidden to issue any writs of *certiorari* or *habeas corpus* to remove any cause from any county court, the city and county of Philadelphia excepted; and they were authorized to hold Courts of Nisi Prius in and for the city and county of Philadelphia, as heretofore.    By the act of the 20th March, 1810, the original civil jurisdiction of the Supreme Court within the city and county of Philadelphia, over five hundred dollars, was restored, and Courts of Nisi Prius in the same, were to be held for thirty-three weeks, which

was left discretionary with the judges as to the time, by the act of the 6th March, 1812.

In Roberts' Digest of Select British Statutes, published in 1817, the learned judge says, page 328: "By the act of 22d May, 1722, which established the Supreme Court, the judges or any two of them were authorized to perform a certain circuit, for the trial of issues in fact, as fully as the justices of Nisi Prius in England might or could do. Since that period various alterations have taken place in relation to the Supreme Court. At the present day *it is merely a court in the last resort in all parts of the State,* except Philadelphia, where Courts of Nisi Prius are still held for the city and county, as heretofore they were throughout the State.

By the ninth, tenth, and eleventh sections of the act of 1st of March, 1825, the original civil jurisdiction of the Supreme Court within the city and county of Philadelphia was taken away, and no *certiorari* was to issue to remove any indictments from the Court of Quarter Sessions of the county, or the Mayor's Court of the city; which sections were, however, repealed by the act of the 8th April, 1826, which restored the Circuit Court system, and added two judges to the Supreme Court.

On the 30th December, 1833, the revisers made a report to Governor Wolf, accompanied by six bills, one of which was entitled an act relating to the organization of the Courts of Justice; three of the subdivision of which were,

1. Of the Supreme Court in Banc.
2. Of the Supreme Court at Nisi Prius.
3. Of the Circuit Courts of the Supreme Court.

The second subdivision consisted of two sections, the 16th and 17th, both of which were enacted by the legislature, providing that "The Supreme Court in term time, or a majority of the judges thereof in vacation, are empowered and enjoined, when occasion shall require, to direct the holding of Courts of Nisi Prius in the city of Philadelphia, for the city and county of Philadelphia, before the said judges, or some one or more of them, at such days, and during such times as they shall designate;" and that "the judges of the Supreme Court shall severally, as often as may be consistent with their other duties, and at least once in every year, at such times and for such periods as they shall appoint, hold Courts of Nisi Prius within the city and county of Philadelphia, *and not elsewhere.*" Here then was not only an authority to hold Courts of Nisi Prius only in the city of Philadelphia, but also an absolute prohibition to hold them in any other county in the State. This derives an additional force from the fact, that the third subdivision as reported established Circuit Courts for every other county in the commonwealth as they then existed, using the language of the act of

1799, "Instead of Courts of Nisi Prius, there shall be holden and kept by the judges of the said Supreme Court, in each of the counties of this commonwealth, the city and county of Philadelphia excepted, a court of record, the name and style thereof shall be The Circuit Court of the Supreme Court of the (respective) county."

All the sections of this third subdivision were stricken out by the legislature, and the Circuit Courts were expressly abolished, leaving the Supreme Court with an original civil jurisdiction of over five hundred dollars, in the city and county of Philadelphia, with power to hold Courts of Nisi Prius there, *but not elsewhere,* and placing it in the same position as to jurisdiction, so accurately described by Judge Roberts in 1817. This was the effect of the act of the 14th April, 1834, and its power to hold Courts of Nisi Prius was expressly limited to the city and county of Philadelphia, when the revisers, on the 9th January, 1835, made their *sixth* report to Governor Wolf, accompanied *inter alia* by a bill entitled "An act relating to the jurisdiction and powers of the courts." It gave the Supreme Court the power in the manner *then* practised and allowed, but made no alteration whatever in the organization of the Supreme Court as then established by the act of the preceding year. The ninth and tenth sections of this bill were compiled from the seventh section of the act of 13th April, 1791, but in the passage of the act of the 16th June, 1836, the legislature struck out or omitted the tenth section, apparently intending that no special *allocatur* should be required; but the construction adopted by the Supreme Court in the *Commonwealth* v. *McGinnis,* 2 Wharton, 113, decided on the 7th January, 1837, rendered this attempt nugatory. The legislature not having expressly repealed the proviso of the seventh section, which was the existing law at the time of the passage of the act of 1836, the court held it still in existence, and the law of 1791 was substantially in force in 1860, when it was incorporated in that year, relative to criminal procedure, and is to be found in the thirty-third section.

By the act of the 26th July, 1842, the Court of Nisi Prius for the city and county of Philadelphia was made a distinct and independent court, and by the 4th section of the act of February, 1848, writs of *certiorari* and writs of error issued by the Supreme Court, to remove the proceedings from the Criminal Court of the city and county of Philadelphia, must be especially allowed by one of the judges of the Supreme Court. This last section is not enumerated among the acts and parts of acts repealed by the act of 31st March, 1860.

The decision in the *Commonwealth* v. *Simpson,* 2 Grant, 438, is expressly confined to the power of trying criminal cases at

[Robinson *v.* Edinboro Academy.]

Nisi Prius in the city of Philadelphia, which are removed from the criminal courts of that city and county, and is, no doubt, perfectly correct, although Judge Black's observations as to its expediency are very striking and forcible.    But this case clearly does not authorize us, in the face of a direct prohibition by the legislature, to hold Courts of Nisi Prius in any other of the counties of the State for the trial of either civil or criminal cases; and, therefore, taking the rule established .by this court in the *Commonwealth* v. *Smith*, 4 Binney, 117, we must refuse to remove indictments by *certiorari* into this court for trial, from the other counties of the State, as we are expressly prohibited by the proper legislative authority from holding courts of Nisi Prius in them, for that or any other purpose.

I am of opinion, therefore, as we have no power to order a Court of Nisi Prius to be held in the county of Alleghany, that the indictment and record in this case, should be remanded to the court below,.to be there tried and determined.

NOTE.—On the first Monday in September, 1861, the Supreme Court at *Nisi Prius* met at Pittsburg, for the trial of this case, LOWRIE, C. J., on the bench. The attendance of the main witness, Sylvester W. Murphy, for the prosecution, not having been procured, counsel for the commonwealth again asked for a continuance.    This was resisted, and, after argument, was refused by the court.    The district attorney moved for leave to enter a *nolle prosequi.*    Defendant's counsel objected and insisted upon trial, alleging that the motion could not be allowed.    After full argument, however, leave was granted by the court, and thereupon a *nolle prosequi* was entered, and the defendants were discharged from their recognizances.