IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1880.

## Commonwealth, ex rel. Torrey, *versus* Ketner.

1. Where a person is being prosecuted in a court for a matter which is not an indictable offence by the law of Pennsylvania, or is one over which the court below has no jurisdiction, the Supreme Court will discharge such person on habeas corpus.

2. Embezzlement by the cashier of a bank is not a common-law offence. An indictment therefor must rest upon some statute or it cannot be sustained.

3. Embezzlement by a cashier of a national bank is punishable solely under section 5209 Revised Statutes of the United States. The Acts of March 31st 1860, May 1st 1861 and June 12th 1878, of the General Assembly of this state, were not intended to provide a punishment for such officers, and the penalties of said acts cannot be imposed upon them.

January 6th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

In the Supreme Court, Eastern District, of January Term 1880, No. 104.

This was a writ of habeas corpus specially allowed by one of the justices of the Supreme Court. The facts were these: William Torrey petitioned the Supreme Court, setting forth that he was unjustly confined in the jail of the county of Schuylkill, to await trial upon a bill of indictment charging him, as the cashier of the First National Bank of Ashland, a bank organized, incorporated and established under the laws of the United States, with embezzling the moneys of said bank, and suggesting that the court in which said indictment had been found had no jurisdiction of the offences charged in said indictment, and that he was therefore unlawfully detained in the custody of the warden of said jail, and praying for a writ of habeas corpus, &c.

(372)

[Commonwealth *v.* Ketner.]

On the 10th of December 1879, His Honor, Justice PAXSON, of the Supreme Court, specially allowed said writ, returnable forthwith before him.

Ketner, the warden of the jail, returned that said Torrey was in his custody, but alleged in said return "that the said William Torrey is so restrained lawfully by virtue of a surrender by his bail upon a bail-piece, and also by virtue of a warrant issued out of the Quarter Sessions of the Peace of the said county of Schuylkill, and the charge mentioned in said warrant and bail-piece is shown by the copy of the record of said court, hereunto annexed, against said William Torrey."

By this record it appeared that Torrey had been arrested by state process and a prosecution begun before a justice of the peace, which was returned to the Quarter Sessions of Schuylkill county, where a true bill was found, the indictment consisting of three counts, each of which charged the petitioner, as cashier of the National Bank of Ashland, with having misappropriated funds of said bank, contrary to the form of the Act of Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania. The prisoner, on arraignment, pleaded "not guilty," and the cause being called to trial, the jury disagreed and were discharged, when the court directed the prisoner to renew his recognisance. He was then surrendered by his bail and again arrested, whence his petition.

Upon the petition and return, PAXSON, J., on December 12th 1879, made the following order: "The hearing in this case is continued to the first Monday of January next at eleven o'clock, A. M., before the court in banc, the relator to enter bail in the sum of $6000, conditioned for his appearance on the day aforesaid, and to remain and abide the order of the court in the premises, and in default of bail as aforesaid, the relator to be remanded."

On the first Monday of January 1880, the case was argued in this court.

*William A. Marr, James Ryon, John W. Ryon* and *William B. Mann,* for relator.—Under the Constitution of 1874, the Supreme Court has original jurisdiction in cases of habeas corpus.

In this proceeding, the court does not assume a jurisdiction to review or reverse the sentence or judgment under which the prisoner is held, but by the exercise of the jurisdiction in habeas corpus, the court will look behind all forms, and inquire into and dispose of the case upon its merits, notwithstanding any technical questions or surroundings.

When the proceedings in the court are void for want of jurisdiction, habeas corpus will lie: Brown *v.* United States, 14 Am. Law Reg. N. S. 566; Ex parte Lange, 18 Wall. 163; Ex parte

Robinson, 6 McLean 355; The State v. Adams, 4 Black 146; The State v. Pike, 15 N. H. 83; The People v. Kelley, 38 Cal. 145; The People v. Sweetman, 3 Park Crimes R. 338; Martin v. Hunter, 1 Wheat. 304.

The Act of 1878 contains in substance the whole of sections 116, 117, 118 and 119 of the Crimes Act of 1860, which relates to offences by the officers of banks. As this new act embodies the old acts it is a repeal of the old act. The new act of June 12th 1878, changes the penalty and the period of the Statute of Limitations. If the defendant should be convicted, he could not be sentenced under the Act of 1878, for it was passed after the alleged offence could have been committed, for this bank went into the hands of a receiver in 1877, and the old penalty is repealed. The Crimes Act of March 31st 1860, section 131, 1 Purd. 343, defines the penalty for any of these offences, to be imprisonment not exceeding two years, or be fined in any amount not exceeding $1000, or both or either, at the discretion of the court.

The Act of 1878 makes the penalty, fine not exceeding $1000, and imprisonment by separate or solitary confinement at hard labor not exceeding six years. The defendant moved to quash the indictment in the court below for the reasons above stated, and then the Commonwealth claimed that the indictment was under the 36th section of the Act of 1st May 1861, entitled, "A supplement to an act to establish a system of free banking in Pennsylvania, and to secure the public against loss from insolvent banks, approved 31st March 1860." The answer to the Commonwealth's argument upon this section is that it is not a general act, and applies only to offences committed by officers, &c., of banks created under the Free Banking Act.

There can, therefore, be no question as to the concurrent jurisdiction in this case of the state and the United States courts; for at the time of the adoption of the Constitution of the United States, there was no jurisdiction in our state court to punish embezzlement, &c., by officers of banks, and also because Congress has made the criminal jurisdiction over all offences cognisable under the authority of the United States, exclusive in the United States courts, except where the laws of the United States should otherwise provide: Houstin v. Moore, 5 Wheat. 1; 1 Kent's Com. 398; Curtis Com. 176.

The National Banking Act of 3d June 1864, contains no such proviso, and hence the jurisdiction over offences against the provisions of that act is exclusive in the national courts. And it follows if the state court has no jurisdiction over the particular offence charged against the relator that the indictment, and all the proceedings under it are *coram non judice*, are null and void, and this court will so say, inasmuch as the respondent set up these

[Commonwealth v. Ketner.]

proceedings as the ground for detaining the relator: Commonwealth v. Felton, 101 Mass. 204; State v. Tuller, 34 Conn. 280; Commonwealth v. Barry, 116 Mass. 1.

*A. W. Schalck* and *Hughes & Farquhar*, for respondent.—A habeas corpus cannot be made a substitute for a writ of error in a criminal case: Commonwealth v. Deacon, 8 S. & R. 72; Commonwealth v. Lecky, 1 Watts 68; Commonwealth v. Keeper of Jail, 2 Casey 279; Passmore Williamson's Case, Id. 9.

It is to be noted by the copy of the indictment annexed to the return, that the charge against the relator is not for a violation of the provisions of any Act of Congress as stated in relator's petition, but is simply a charge of embezzlement by an officer of a bank in violation of the laws of this Commonwealth.

In Bletz v. Columbia National Bank, 6 Norris 87, this court rules that the courts of this state have jurisdiction of cases brought to recover the penalty of double the usurious interest taken by national banks in violation of the National Banking Acts, and this jurisdiction did not depend upon any provisions in said acts permitting the same.

The same point has been substantially ruled in the same way by the Supreme Court of Ohio, in the case of Hade, Receiver v. McVagh, reported in the fifth volume of the Reporter 506, and has been substantially recognised by this court in the case of Lucas v. The Bank, 28 P. F. Smith 228.

The courts of Pennsylvania have the power to try and punish the offence of which Torrey was guilty. It is a crime against this State. She has the authority, as one of her reserved rights, to try and punish such offenders. The money embezzled belongs to individuals who own the stock of the bank. All that is conferred by Federal authority on the bank is its franchises. It is none the less therefore the property of the citizens of Pennsylvania. The source of title is of no consequence in a criminal prosecution. The question is simply one of the power of the State to protect its own citizens.

Mr. Justice PAXSON delivered the opinion of the court, January 19th 1880.

It appears by the return to this writ, that the relator is held to answer an indictment in the Court of Quarter Sessions of Schuylkill county, charging him, as cashier of the First National Bank of Ashland, with having embezzled the funds and property of said bank. There are three counts in the indictment, each varying the form of the charge, but not essentially changing its substance.

It is almost needless to say, that a habeas corpus is not a writ of error. Hence, if the court below had jurisdiction of the offence, we cannot correct its rulings in this proceeding, however errone-

ous they may be.   On the other hand it is equally clear, that if the relator is being prosecuted for a matter which is not an indict able offence by the law of Pennsylvania, or one over which the court below has no jurisdiction, it would be our right as well as our plain duty to discharge him.   No authority is needed for so obvious a proposition.

Embezzlement by the cashier of a bank is not a common-law offence.   This indictment must rest upon some statute of this state, or it cannot be sustained.   Has it such support?   As preliminary to this question, it is proper to say, that section 5209 of the United States statutes, provides specifically for the punishment of cashiers and other. officers of national banks, who shall be guilty of embezzling the moneys, funds or credits of such institutions.   The relator was not indicted under this section, and could not have been in a state court.   Our own legislation upon this subject may be briefly stated.   We have first, the Crimes Act of March 31st 1860, Pamph. L. 382, the 116th section of which prescribes and punishes the offence of embezzlement by any person, "being an officer, director or member of any bank, or other body corporate or public company." Then we have the Act of May 1st 1861, Pamph. L. 515, entitled " A supplement to an act to establish a system of free banking in Pennsylvania, and to secure the public against loss from insolvent banks, approved 31st March 1860," which also prescribed and punished embezzlement by bank officers.   Lastly, there is the Act of 12th June 1878, Pamph. L. 196, which amends the aforesaid 116th section of the Act of 1860, by substituting a new section in its place, and imposing a different punishment.   This leaves the Acts of 1861 and 1878 as the only ones which could possibly support the indictment.   It was urged, however, and with much force, that the Act of 1861 was only intended to apply to banks organized under the free banking law of which it forms a part; and that as to the Act of 1878, the offence charged in the indictment was committed prior to its passage.   This fact was formally conceded upon the argument, and while we might not be able for such reason to grant relief upon habeas corpus, it furnishes a conclusive reason why, upon a trial in the court below, the Commonwealth could derive no aid from the Act of 1878.

· We are spared further comment upon these acts for the reason that they have no application to national banks.   Neither of them refers to national banks in terms, and we must presume, that when the legislature used the words "any bank," that it referred to banks created under and by virtue of the laws of Pennsylvania. The national banks are the creatures of another sovereignty.   They were created and are now regulated by the Acts of Congress. When our Acts of 1860 and 1861 were passed, there were no national banks, nor even a law to authorize their creation.   When the Act of 1878 was passed, Congress had already defined and pun-

ished the offence of embezzlement by the officers of such banks. There was therefore no reason why the State, even if it had the power, should legislate upon the subject. Such legislation could only produce uncertainty and confusion, as well as a conflict of jurisdiction. In addition, there would be the possible danger of subjecting an offender to double punishment, an enormity which no court would permit, if it had the power to prevent it.

An Act of Assembly prescribing the manner in which the business of *all* banks shall be conducted, or limiting the number of the directors thereof, could not by implication be extended to national banks, for the reason, that the affairs of such banks are exclusively under the control of Congress. Much less can we, by mere implication, extend penal statutes like those of 1861 and 1878 to such institutions.

The offence for which the relator is held, is not indictable either at common law or under the statutes of Pennsylvania. We therefore order him to be discharged.