Statement of Facts.

# LUCIEN ALLEN ET AL. v. THOMAS H. CARTER.

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS
OF SCHUYLKILL COUNTY, IN EQUITY.

Argued February 16, 1888—Decided March 12, 1888.

Section 64, of the Crimes Act of March 31, 1860, P. L. 399, providing that
it shall be a misdemeanor for the cashier of any bank of this common-
wealth to engage in any other profession, occupation or calling, is not
applicable to the cashiers of national banks organized under the acts of
congress : Commonwealth v. Ketner, 92 Pa. 372, followed.

2. Videtur : The power of congress to create a complete system for the
government of national banks, being conceded, a disqualification may
not be imposed upon an officer of such an institution by an act of the
state legislature where none has been imposed by the act of congress.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 164 January Term 1887, Sup. Ct.; court below, No. 7
July Term 1886, C. P. in equity.

On June 24, 1886, Thomas H. Carter filed a bill in equity
against Lucien H. Allen, Charles F. Allen and Charles F.
Lloyd, averring inter alia :

That on or about July 23, 1880, the plaintiff entered into
partnership with Lucien H. Allen, under the firm name of
Carter, Allen & Co., in the general foundry, machinery and
boiler manufacturing business in Tamaqua, in which partner-
ship the plaintiff's interest was two-thirds and said Allen's in-
terest was one-third; that said firm continued up to June 19,
1886, when said Allen transferred all his interest in the firm
to Charles F. Allen and Charles F. Lloyd; praying for a de-
cree that the partnership should be decreed to be dissolved,
and that the plaintiff was entitled as continuing partner to the
custody, control and management of the assets of said part-
nership for the purpose of winding up its business, etc., and
for a special injunction till hearing and thereafter a perpetual
injunction, restraining the defendants from interfering with
the rights of the plaintiff as liquidating partner, etc. A spe-
cial injunction was awarded on the filing of the bill.

On the hearing, subsequently, of a motion to continue the

special injunction granted, the question passed upon in this court was raised, among others, by an affidavit of Lucien H. Allen, that from the organization of said partnership till the present, the plaintiff, being the cashier of the First National Bank of Tamaqua, was prohibited by statutes from engaging in any business other than as cashier, and being so prohibited could not enforce any contract of copartnership made in violation of said statutes.

On December 20, 1886, the court, PERSHING, P. J., filed the following opinion and decree:

A partnership was entered into between the complainant and L. H. Allen, one of the defendants, on or about July 23, 1880, under the firm style of Carter, Allen & Co. By a letter dated June 22, 1886, L. H. Allen informed his partner that he had, on June 19, 1886, sold all his right, title and interest in the personal property belonging to Carter, Allen & Co., to C. F. Lloyd and C. F. Allen, and had also made a lease to them of the shops for three years. The bill of sale made by L. H. Allen to Lloyd and C. F. Allen, of June 19, 1886, sets forth that he and Thomas H. Carter "compose the firm of Carter, Allen & Co., founders and machinists, of Tamaqua," and is for the undivided one half part of the property mentioned particularly therein. There is a dispute as to the amount of interest the partners respectively had in the business of the firm, but that a partnership existed is shown by the evidence on both sides, and that the sale of what L. H. Allen claimed was his interest was without the knowledge or consent of his partner, Carter, is not denied. Claiming to be the continuing partner, upon whom devolved the right to wind up the business of the said firm, the complainant filed the above stated bill, and thereupon obtained an injunction from Judge Bechtel at Chambers, restraining the defendants till hearing, from in any manner interfering with complainant's right of control of the partnership property.

It appears from the evidence submitted, that subsequently, viz.: on October 20, 1886, all the right, title, &c., of L. H. Allen, in all the personal property in and about the said works, was sold at sheriff's sale and purchased by the said C. F. Allen and C. F. Lloyd, for the sum of $1,250.

That the sale by Lucien H. Allen of his interest in the partnership worked a dissolution of the firm of Carter, Allen & Co., is distinctly decided in Horton's App., 13 Pa. 67. It is there held that, after a dissolution thus effected, the assignee, or incoming partner, cannot withdraw the effects or his share of them. The remaining partner is entitled to hold possession for the purpose of paying off the debts, and winding up the assets of the firm. This is not only his right but his duty. It is not necessary to cite the many other cases to the same point.

The defendant, L. H. Allen, now strenuously asserts that the contract of partnership entered into between himself and the complainant was a nullity, and that no rights as the continuing partner can be claimed by the complainant under it. The ground of this is, that the complainant at the time the partnership was formed, was, and still is, the cashier of a national bank. To support this position, the act of April 16, 1850, and its supplements, regulating banks deriving their power from the state, is relied upon. The statute provides that it shall not be lawful for the cashier of any bank to engage in any other profession, occupation or calling, either directly or indirectly, than that appertaining to his office of cashier. A violation of this provision subjects the cashier of any bank, on conviction in any court of criminal jurisdiction, to the payment of a fine not exceeding five hundred dollars. The exceptions to this legislation do not concern the case in hand. The 64th section of the penal code of 1860, enacts, that if " any cashier of any bank of the commonwealth shall engage, directly or indirectly, in the purchase or sale of stock, or in any other profession, occupation or calling, other than that of his duty as cashier, he shall be guilty of a misdemeanor, and being thereof convicted, shall be sentenced to pay a fine not exceeding five hundred dollars."

The earliest decision under this provision in the act of 1850, is that of Young v. Robertson, 6 Phila. 184, made by Judge SHARSWOOD, in the District Court of Philadelphia, in which he ruled that the fact that one member of a partnership plaintiff was a cashier of a bank, was a sufficient bar to an action for goods sold and delivered by the firm of which he was a member. The same judge afterwards delivered the opinion

of the Supreme Court in the case of Burkholder v. Beetem, 65 Pa., 496. It was an action brought to recover back money paid for the purchase of stock in a coal company to the cashier of a bank. The court says: " It may be that the purchase of stock in a coal company for investment only or subsequent sale, would not be within the prohibition, but when there is evidence, as there was in this case, that the cashier was engaged in speculating in stocks, the case is clearly within the letter and spirit of the act. It is true that when a contract so prohibited by statute has been executed, both parties being in pari delicto, an action cannot be maintained by either party to rescind the contract: Addison on Contracts, 149."

We must remember in disposing of the present controversy, that we are dealing with the case of a cashier of a national bank and not of a state bank. Our state enactments, which are much older, can have no reference to the act of congress creating national banks. The National Banking Act, § 5209, specifies the offences of which cashiers and other officers may be convicted. For none of these can they be indicted in a state court, nor is their being concerned in other occupations made a crime. The affairs of these banks are exclusively under the control of congress: Commonwealth ex rel. Torrey v. Ketner, 92 Pa. 372. " We must presume," said Mr. Justice PAXSON in that case, " that when the legislature used the words ' any bank,' it referred to banks created under and by virtue of the laws of Pennsylvania. The national banks are creatures of another sovereignty. They were created, and are now regulated by the acts of congress." Penal statutes cannot be extended by implication to such institutions: Idem.

The right of exclusive legislation carries with it the right of exclusive jurisdiction: United States v. Cornell, 2 Mass. 60. We cannot, therefore, with the light before us, assent to the claim made, that the purchase at the sheriff's sale of L. H. Allen's interest, vested in C. F. Allen and Lloyd the exclusive right to the possession and control of all the assets and partnership property of the firm of Carter, Allen & Co. Supposing, however, that the law of the state can be extended to a cashier of a national bank, and thus punish him for doing what is not declared to be an offence under the act of congress relating to national banks, surely he must first be judicially convicted of

the crime before his rights of property can be taken away from him and handed over to others. The familiar rule of the law is, that conviction and sentence alone establish the guilt of the accused, and fasten upon him the legal consequences.

And now, December 20, 1886, the injunction is continued until final hearing, or further order of the court.

By the Court.

Thereupon the defendants took this appeal specifying that the court erred:

1. In granting a preliminary injunction.

2. In granting an injunction and in not deciding and decreeing that the said Thomas H. Carter was prohibited by the several acts of assembly from carrying on the machine, foundry and boiler manufacturing business, while he was cashier of the First National Bank of Tamaqua, and his contracts in this respect were void and could not be enforced.

*Mr. D. C. Henning* and *Mr. John W. Ryon* (with whom were *Mr. C. F. Shindel* and *Mr. James Ryon*), for the appellants:

1. The provisions of our statute law disclose the policy of the commonwealth. It is made a misdemeanor for the cashier of any bank to engage in any other profession, occupation or calling: § 10, art. 5, act of April 16, 1850, P. L. 481; act of April 18, 1856, P. L. 403–4; § 18, act of May 13, 1876, P. L. 168; § 64, act of March 31, 1860, P. L. 399. What the legislature declares unlawful, the courts must pronounce to be wrong. What the legislature prohibits, in judgment of law is malum in se: Hall v. Franklin, 3 M. & W. 259.

2. These state statutes are police regulations, binding upon the citizens of the commonwealth. As the plaintiff was the cashier of a bank he could make no contracts to carry on other business which the laws of the commonwealth would enforce: 2 Pars. Con., § 82; Burkholder v. Beetem, 65 Pa. 505; Beetem v. Burkholder, 69 Pa. 249. Where an act or contract is prohibited under a penalty, it is unlawful and void, though not expressly so declared: Seidenbender v. Charles, 4 S. & R. 151; Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233; Hall v. Franklin, 3 M. &. W. 259; 1 Pars. Con., 380, n.

3. Under the national bank act, territorial locality is regarded throughout. A national bank located in Pennsylvania is a bank of this commonwealth. The language of the statutes is, "If any cashier of any bank": Commonwealth v. Tenney, 97 Mass. 50; Commonwealth v. Fulton, 101 Mass. 204. The power in the United States to create national banks is not among those expressly prohibited to the states, under the constitution of the United States; and the settled rule is, that where the authority of the states is taken away only by implication, they may continue to exercise the power until the United States exercise their power, for until then there can be no incompatibility: Moore v. Houston, 3 S. & R. 196; Buckwalter v. United States, 11 S. & R. 196; Pregg's Case, 16 Pet. 630; In re McNeil, 80 U. S. 236; Gilman v. Philadelphia, 3 Wall. 713.

*Mr. Guy Farquhar* and *Mr. Wayne MacVeagh*, for the appellee:

The sale and assignment of all his interest by a partner in the partnership business, works a dissolution: Horton's App., 13 Pa. 67; Cochran v. Perry, 8 W. & S. 262; Mason v. Connell, 1 Wh. 381.

2. An examination of § 10, act of April 16, 1850, will show that it could not have been intended to apply to any but state banks created under the laws of Pennsylvania; and the supplements to said act do not extend the original act to national banks either expressly or by implication. The term, "any bank," in the Crimes Act of 1860, has been held by this court not to extend said acts to officers of national banks: Commonwealth v. Ketner, 92 Pa. 372.

OPINION, MR. JUSTICE PAXSON.

This case is ruled by Commonwealth ex rel. Torrey, v. Ketner, 92 Pa. 372. It was there held that our statutes of 1860, 1861 and 1878, defining and punishing the offence of embezzlement by cashiers of banks had no application to such offences committed by cashiers of national banks. It was contended, however, by the learned counsel for the appellants that there is a material difference between that case and this, and that the rulings in the former do not apply.

In Torrey's Case, Torrey had been indicted in the Quarter Sessions of Schuylkill county for embezzlement as cashier of a national bank. The indictment was under our state law. At the time the offence was committed it was punishable under section 5209 of the Revised Statutes of the United States. The case was heard upon habeas corpus pending the prosecution in Schuylkill county, and we held that an indictment would not lie under our state statutes; and as the offence was not indictable at common law, we discharged the relator. In commenting upon the acts of assembly referred to, it was said in the opinion of the court: "We are spared further comments upon these acts for the reason that they have no application to national banks. Neither of them refers to national banks in terms, and we must presume that when the legislature used the words 'any bank' it referred to banks created under and by virtue of the laws of Pennsylvania. The national banks are the creatures of another sovereignty."

The case in hand is as follows: Thomas H. Carter, complainant, was the cashier of the First National Bank of Tamaqua. At the same time he was engaged in business as a partner in the firm of Carter, Allen & Co. The firm carried on a general foundry, machinery and boiler manufacturing business in Tamaqua. It was dissolved by the sale of Lucien H. Allen's interest to Charles F. Allen and Charles F. Lloyd. The complainant claimed the right as liquidating partner to the possession of the assets of the firm for the purpose of closing up the business and paying creditors, and filed this bill to enjoin the appellees from intermeddling with him in doing so.

Under ordinary circumstances the right of complainant to the control of the assets would be clear. It was resisted in this case, however, upon the ground that under the act of assembly bank cashiers are prohibited from engaging in business. The 64th section of the Penal Code of 1860 P. L., 399, provides: "If any cashier of any bank in this commonwealth shall engage, directly or indirectly, in the purchase or sale of stock, or in any other profession, occupation. or calling other than that of his duty as cashier, he shall be guilty of a misdemeanor, and being thereof convicted shall be sentenced to pay a fine not exceeding five hundred dollars."

The act of congress regulating national banks contains no

clause punishing cashiers for engaging in other business, nor does it contain any prohibition of the same.

The distinction between Torrey's case and the one now before us is this : in the former the offence of embezzlement was punishable under an act of congress; while in the latter there has not been any legislation by congress making it an offence for the cashier of a national bank to engage in business.

It was conceded by the appellees that had congress legislated upon this subject, such legislation would have superseded our state law, so far as national banks are concerned, but that in the absence of such legislation our state law took effect, and made it an offence for the cashier of a national bank to engage in any occupation or business outside of his official duties. We are of opinion that the distinction referred to is a distinction without a difference. Torrey's case was decided upon the broad ground that our statutes in regard to embezzling cashiers did not apply to cashiers of national banks and was not intended to. The fact that such persons were punishable under the legislation of congress was referred to argumentatively as an additional reason why an indictment would not lie under our state law. We held then and we hold now to the broader position that our statutes have no application.

The national banks, as was observed in Torrey's case, are the creatures of another sovereignty. The National Banking Act and its supplements, create a complete system for the government of those institutions. Conceding the power of congress to create this system, I am unable to see how it can be regulated or interfered with by state legislation. The act of 1860, if applied to national banks, imposes a disqualification upon cashiers of such institutions where none has been imposed by act of congress. If the state may impose one qualification upon the cashiers, why not another? If, upon the cashier, why not upon the president or other officer? Nay, further, suppose the legislature should declare that no person should be a bank director unless he has arrived at fifty years of age, or should be the owner of one hundred shares of stock, could we apply such an act to national banks? If so, such institutions would have a precarious existence. They would be liable to be interfered with at every step, and it

might not be long before the whole national banking system would have to be thrown aside as so much worthless lumber.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.