## Commonwealth v. Derencin.

*Criminal law—Banks and banking—Embezzlement—National banks—Acts of March 31, 1860, and May 18, 1917.*

1. A state has the legitimate power to define and punish crimes by general laws applicable to all persons within its jurisdiction, and it may declare by special laws certain acts to be criminal offences when committed by officers or agents of its own banks and institutions, but it is without lawful power to make such special laws applicable to banks organized and operated under the laws of the United States.

2. An indictment of an employee and agent of a national bank for fraudulent conversion and embezzlement under the Act of May 18, 1917, P. L. 241, and section 114 of the Crimes Act of March 31, 1860, P. L. 382, will be quashed.

Motion to quash indictment. Q. S. Fayette Co., Dec. Sess., 1921, No. 166.

*William A. Miller*, District Attorney, and *Sterling, Higbee & Matthews*, for Commonwealth.

*John Duggan, Jr.*, for defendant.

VAN SWEARINGEN, P. J., Dec. 19, 1921.—The defendant, M. Derencin, was the manager of the foreign department of the First National Bank of Connellsville, and was indicted on two counts: (1) For the fraudulent conversion to his own use of the sum of $30 deposited in and belonging to the bank, but actually received by and in the possession of the defendant, in alleged violation of the Act of May 18, 1917, P. L. 241, which makes it a misdemeanor by "any person, having received or having possession, in any capacity or by any means or manner whatever, of any money or property of any kind whatsoever, of or belonging to any other person, firm or corporation, or which any other person, firm or corporation is entitled to receive and have, who fraudulently withholds, converts or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person;" and (2) for the embezzlement and fraudulent appropriation to his own use of the sum of $30, in alleged violation of section 114 of the Crimes Act of March 31, 1860, P. L. 382, 410, which makes it a misdemeanor if "any person, being a banker, broker, attorney, merchant or agent, and being entrusted for safe custody with the property of any other person, shall, with intent to defraud, sell, negotiate, transfer, pledge, or in any manner convert or appropriate to or for his own use, or the use of any other person, such property or any part thereof."

There is before us a motion to quash the indictment on the ground that neither of the statutes mentioned applies to national banks. One of the acts makes no direct reference to banks of any kind, and the other mentions only "any person being a banker."

In Com. v. Ketner, 92 Pa. 372, where the defendant was indicted as cashier of a national bank with embezzling the funds of the bank, and was discharged on *habeas corpus* for the reason that the offence was not indictable at common law, and that our statutes defining and punishing such offences did not apply

1 D. & C.

to national banks, our Supreme Court, in an opinion by Mr. Justice Paxson, after discussing section 116 of the Crimes Act of March 31, 1860, P. L. 382, as amended by the Act of June 12, 1878, P. L. 196, and the supplemental Act of May 1, 1861, P. L. 503, relative to embezzlement by officers and employees of banks and other corporations, said: "We are spared further comment upon these acts for the reason that they have no application to national banks. Neither of them refers to national banks in terms, and we must presume that when the legislature used the words 'any bank,' it referred to banks created under and by virtue of the laws of Pennsylvania. The national banks are the creatures of another sovereignty. They were created, and are now regulated, by the Acts of Congress. When our Acts of 1860 and 1861 were passed, there were no national banks, nor even a law to authorize their creation. When the Act of 1878 was passed, Congress had already defined and punished the offence of embezzlement by the officers of such banks. There was, therefore, no reason why the State, even if it had the power, should legislate upon the subject. Such legislation could only produce uncertainty and confusion, as well as a conflict of jurisdiction. In addition, there would be the possible danger of subjecting an offender to double punishment, an enormity which no court would permit, if it had the power to prevent it. An act of assembly prescribing the manner in which the business of all banks shall be conducted, or limiting the number of the directors thereof, could not by implication be extended to national banks, for the reason that the officers of such banks are exclusively under the control of Congress. Much less, can we, by mere implication, extend penal statutes like those of 1861 and 1878 to such institutions. The offence for which the relator is held is not indictable either at common law or under the statutes of Pennsylvania. We, therefore, order him to be discharged."

In Allen's Appeal, 119 Pa. 192, where it was held that section 64 of the Crimes Act of March 31, 1860, P. L. 382, 399, which provides that it shall be a misdemeanor for the cashier of any bank of this Commonwealth to engage in any other profession, occupation or calling, is not applicable to cashiers of national banks organized under the Acts of Congress, it was said by Mr. Justice Paxson: "The National Banking Act, and its supplements, create a complete system for the government of those institutions. Conceding the power of Congress to create this system, I am unable to see how it can be regulated or interfered with by State legislation. The Act of 1860, if applied to national banks, imposes a disqualification upon cashiers of such institutions where none has been imposed by Act of Congress. If the State may impose one qualification upon the cashiers, why not another? If upon the cashier, why not upon the president or other officer? Nay, further, suppose the legislature should declare that no person should be a bank director unless he has arrived at fifty years of age, or should be the owner of one hundred shares of stock, could we apply such an act to national banks? If so, such institutions would have a precarious existence. They would be liable to be interfered with at every step, and it might not be long before the whole national banking system would have to be thrown aside as so much worthless lumber." In Columbia National Bank v. Powell, 265 Pa. 85, it was held that the Escheat Act of June 7, 1915, P. L. 878, which requires an annual report of deposits to be made to the Auditor General by "every person, bank, safe deposit company, trust company and corporation organized or doing business under the laws of this Commonwealth," does not apply to national banks doing business in Pennsylvania, citing Com. v. Ketner, 92 Pa. 372, and Allen's Appeal, 119 Pa. 192.

Commonwealth v. Derencin.

In Easton v. Iowa, 188 U. S. 220, James H. Easton, President of the First National Bank of Decorah, had been indicted, convicted and sentenced under a statute of Iowa which prohibited any bank or banking house from receiving deposits when insolvent, and making it a felony for any officer thereof to receive deposits knowing of such insolvency. The statute made no reference to national banks or banking associations. The Iowa Supreme Court affirmed the judgment of the lower court, holding that the statute was applicable to all banks, whether organized under the laws of the state or the Acts of Congress, and on writ of error the Supreme Court of the United States accepted as correct the construction placed upon the statute by the highest court of Iowa, and, in reversing the Iowa courts, confined its consideration to the question whether, as so construed, the act was within the jurisdiction of the state. In delivering the opinion of the court, Mr. Justice Shiras cited and quoted, inter alia, those portions of the opinions of Mr. Justice Paxson, of the Supreme Court of Pennsylvania, in Com. v. Ketner, 92 Pa. 372, and Allen's Appeal, 119 Pa. 192, above quoted, and reached the following conclusion, as stated in the last paragraph of his opinion: "Undoubtedly a state has the legitimate power to define and punish crimes by general laws applicable to all persons within its jurisdiction. So, likewise, it may declare by special laws certain acts to be criminal offences when committed by officers or agents of its own banks and institutions. But it is without lawful power to make such special laws applicable to banks organized and operating under the laws of the United States."

Under the authority, therefore, not only of the Supreme Court of Pennsylvania, but also of the Supreme Court of the United States, we are of opinion that the motion to quash the indictment must be sustained.

And now, Dec. 19, 1921, the indictment is quashed.

From Luke H. Frasher, Uniontown, Pa.