# Duff v. McDonough, Appellant.

*Equity—Attachment for costs—Imprisonment for debt—Act of July 12, 1842, P. L. 339.*

Where a bill in equity was brought, not on or because of any contract between the parties thereto, but to prevent the defendant from consummating a fraud on the plaintiff through the dishonest use of a deed which the defendant had obtained and asking for the cancellation of the same, the court may commit the defendant as for contempt for the nonpayment of costs. The case is not within the provisions of the act of July 12, 1842, P. L. 339, abolishing imprisonment for debt.

The defendant's indebtedness for costs partakes of the nature of the transaction which required the suit to be brought and can be collected in the same way that performance of the rest of the decree can be enforced.

*Record—Ground of suit.*

In ascertaining the grounds of suit and the decree in such a case the

court must look at the whole record; this includes the pleadings, the master's report, opinion of the court, if any be filed, and the decree.

Argued April 6, 1896. Appeal, No. 17, April T., 1896, by defendant, T. M. McDonough, from judgment of C. P. No. 1, Allegheny Co., No. 323, Dec. T., 1888, committing defendant for contempt for nonpayment of costs in equity suit by W. H. Duff, plaintiff. Before RICE, P. J., WICKHAM, REEDER, ORLADY and SMITH, JJ. Affirmed. REEDER, J., dissents.

This was a bill in equity for the conveyance of real estate and a cancellation of deeds. The case was referred to John D. Shafer as master, whose report appears on former appeal in this case in Duff v. McDonough, 155 Pa. 10.

Other facts are stated in the opinion of the Superior Court as follows :

The facts necessary to a proper understanding and decision of this case may be briefly stated as follows: William H. Duff, for a number of years prior to January 12, 1878, held a mortgage for $5,000 against a tract of land in the county of Allegheny. Joseph Ross owned the equity of redemption. In the fall of 1877 Ross employed T. M. McDonough, the appellant, to make sale of the land. McDonough's efforts to sell were unsuccessful, and Ross being unable to pay the mortgage (which had been given by one of his predecessors in title) induced Duff to accept the land in payment. This arrangement was made on or about January 12, 1878. The parties being ignorant of the legal requisites of conveyancing, supposed that all that was needed to give Duff title was for Ross to hand over to him the deed he had received from his vendors. This was accordingly done and before April, 1878, Duff went into possession of the property and has remained in possession ever since.

On April 29, 1878, McDonough obtained from Ross a deed, for the same premises, the consideration mentioned therein being $12,000. On May 23, 1882, this deed was recorded. In September, 1888, Duff, who had previously satisfied his mortgage, accidentally and for the first time learned of the existence of the conveyance to McDonough, and at the same time found out that it was necessary that he should have a deed from Ross. The latter had removed to Tennessee, and when found by Duff,

asserted, although mistakenly, that he had never given McDonough a deed, and conveyed to Duff whatever interest he had left in the premises, by deed dated October 6, 1888. On October 11, 1888, Duff requested McDonough to convey to him the title to the land. McDonough refused to do so, and on the following day conveyed the property to a confederate, one Charles T. Mapes, for a pretended consideration of $4,000. This conveyance was made two days after that on which Duff's bill was filed, but before its service, and it necessitated an amendment, in order to bring Mapes in as a codefendant.

The learned master in the court below found in substance, as an examination of his report will show, that the conveyance from Ross to McDonough was obtained in bad faith, so far as Duff's rights were concerned; that the same was without consideration; and that the essential averments of McDonough's answer were false, and recommended a decree in favor of the plaintiff, and also that the defendants should pay the costs. Speaking of the transfer to Mapes, the master says, " In view of all the circumstances, the master has no hesitation in characterizing the whole account given by McDonough and Mapes of the sale to Mapes, as incredible."

On October 1, 1891, the report was confirmed by the court below, and it was further decreed that McDonough and Mapes should release to Duff their pretended title to the land, deliver up to him for cancellation the deed from Ross to McDonough and pay the costs of suit, including the fees of the examiner and master. The case was taken by appeal to the Supreme Court and the decree of the court below was there affirmed. See report thereof in 155 Pa. 10.

*Errors assigned* were :

1. The court erred in issuing an attachment against said T. Milner McDonough to compel him to pay the costs of record in this case, no costs being fixed as to amount by said decree.

2. The court erred in directing T. Milner McDonough to pay the costs of record in the above case, said McDonough having complied with the decree in every respect except as to the costs, and he on account of poverty being unable to pay the same.

3. The court erred in holding that the costs of record in this case, being a civil debt of record, were such costs as an attach-

376 DUFF *v.* McDONOUGH, Appellant.

Assignment of Errors—Opinion of the Court. [2 Super. Ct.

ment would lie against said T. Milner McDonough, as a compulsory process to compel said T. Milner McDonough to pay said costs, notwithstanding his poverty, or to be committed by the court until he should pay the same.

4. The court erred in holding, as a matter of law, that under the pleadings and proof and decree in said case the payment of said costs could be enforced by an attachment by said court for contempt and an arrest and imprisonment of said McDonough, who was unable to pay the same on account of poverty.

5. The issuing of said attachment in order to compel the payment of said costs and to imprison the said McDonough is illegal and void, and the payment of said costs, they being a civil debt of record, cannot be enforced by an attachment but can only be enforced by an execution.

*James Fitzsimmons*, for appellant.—An attachment will not lie for costs: Welliver's App., 4 Penny. 176; Pierce v. Scott, 40 Leg. Int. 320; Ex rel. Scott v. The Jailor, 1 Grant, 238; Hugg's_Est., 1 Clark, 237.

*W. S. Dalzell*, for appellee.—A court of equity can enforce its decrees by attachment even for the payment of costs, provided the defendant be guilty of fraud or be decreed to do some specified things in addition to the payment of costs : ,Wilson v. Wilson, 142 Pa. 247; Church's App., 103 Pa. 263; Tome's App., 50 Pa. 285 ; Chew's App., 44 Pa. 247.

An attachment will also issue to enforce payment of the master's fee which is costs as against the party compelled to pay them: Janes's App., 87 Pa. 428; Pierce's App., 103 Pa. 27; Bradley v. Railway, 160 Pa. 72.

The party in whose favor the master makes the report must pay the master's fee in the first instance, but having so paid it may be recovered from the party upon whom the costs are ultimately placed: Thompson's App., 11 W. N. 414; Large v. Davis, 12 W. N. 33; Lowenstein v. Biernbaum, 8 W. N. 301.

OPINION BY WICKHAM, J., July 16, 1896 (after stating the facts as above) :

Not until after proceedings for contempt had been instituted against him, did McDonough comply with any part of the de-

cree—then he executed and delivered the release and turned over the Ross deed. He refused however to pay the costs, alleging poverty, and was therefore ordered to be committed for contempt. From this order he has appealed, alleging for error, first, that no attachment could legally issue, as the amount of the costs were not fixed in the decree; and in four other specifications of error, that the court was powerless to compel the payment of the costs by attachment.

As to the first assignment it is enough to say that the amount of the costs could not well appear in the decree, since they could not be fully taxed until after it was made. The other assignments all rest on the supposed protection, afforded the appellant, by the act of July 12, 1842, P. L. 339, abolishing imprisonment for debt. That act provides that, "No person shall be arrested or imprisoned on any civil process issuing out of any court of this commonwealth in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, or due upon any contract express or implied, or for the recovery of any damages for the nonperformance of any contract, excepting in proceedings as for contempt to enforce civil remedies," etc.

Manifestly, the present case is not within the meaning of the act. The suit was brought not on or because of any contract between the parties thereto, but to prevent the appellant from consummating a fraud on the appellee through the dishonest use of the deed, obtained from Ross by the appellant, and which, to quote from one of the learned master's findings, "was not a bona fide conveyance for a valuable consideration." The case must be decided as though the act of 1842 had never been passed, and is governed by the rule enforced in Church's Appeal, 103 Pa. 263.

If, as has been more than once held (Church's Appeal, supra; Wilson v. Wilson, 142 Pa. 247), a trustee, created in the ordinary way, can be compelled by attachment to pay the costs in a suit wherein he has been convicted of unfaithfulness in discharging his duties, for a stronger reason should a trustee ex maleficio guilty of actual fraud persisted in to the end, as was the case here, be liable to a like process. The appellant's indebtedness for the costs partakes of the nature of the transactions which required the suit to be brought and carried through,

378    DUFF *v.* McDONOUGH, Appellant.

Opinion of the Court—Dissenting Opinion.    [2 Super. Ct.

and it can therefore be collected in the same way that performance of the rest of the decree can be enforced. The suit was necessitated by the appellant's fraud, and at the very threshold of the litigation he made its conduct more expensive and complicated by his fraudulent conveyance to Mapes.

In ascertaining the grounds of the suit and the decree, we must look at the whole record, which includes the pleadings, master's report, opinion of the court, if any be filed (Miller's Estate, 136 Pa. 349), and the decree. Anciently the decree recited the pleadings and facts at length, so much so, indeed, that the practice, by reason of its expense, became an abuse. Rule 14, section 78 of our equity rules, following the rule of the federal courts in this respect, forbids the practice and indicates a short form of decree, but, as STORY, J., said in Dexter v. Arnold, 5 Mason, 311, "For the purpose of examining all errors of law, the bill, answers and other proceedings are, in our practice, as much a part of the record before the court as the decree itself."

The motion made by the appellee that this cause should be certified to the Supreme Court is overruled, as the record clearly shows that the amount involved is less than $1,000.

In view of the decision herein given on the merits of the case, we need not further consider the appellee's application for the setting aside of the order, discharging the appellant on habeas corpus, made after he had given bail on his appeal. The application is therefore dismissed.

The specifications of error are overruled and the decree of the court below is affirmed.

REEDER, J. (dissents).

Costs are purely statutory. At common law there is no right to recover costs. In point of fact it was the custom with all juries to include the probable amount of costs in the verdict for damages, but there was no right to recover costs eo nomine at common law. The first statute that gave costs in real actions was the statute of Gloucester, 6 Edward I. c. 1. This was followed by numerous acts in England and afterwards in this state, permitting the collection of costs, as well as, in certain cases, fixing the amount to be paid. Under our modern practice, that portion of the costs which is paid to the officers of

the court partakes of the nature of a contract.   The plaintiff, in bringing the suit, is liable, in the first instance, for the amount of fees which the officers are entitled to receive for services rendered to him in the execution of process, docket entries, etc., and such court officers can recover from the plaintiff, in an action of assumpsit, upon such implied contract the amount of fees to which they would be entitled.   Upon recovering judgment against the defendant the plaintiff can collect from the defendant by his execution the fees which he is supposed to have paid to the officers of the court.   Such has been the practice from the foundation of this state as a province.

It will be seen therefore that costs as such are clearly within the provision of the act of July 12, 1842, P. L. 339, and there can be no imprisonment for debt by reason of the nonpayment of costs as such.

As all costs, however, partake of the nature of the judgment entered in any action brought, and become part thereof, in a judgment for a tort, or in any form of action within the exception of the act of 1842, a capias ad satisfaciendum will issue for costs as well as the judgment.   In a common law action, no capias can issue as a writ of execution for costs except where there has been a judgment entered upon a tort, or upon some action expressly excepted from the provisions of that act.

In the case that we have now under consideration, there could be no imprisonment for debt because of the defendant's failure to pay the costs, merely because they were costs, which were adjudged by the decree of the court against him.   Therefore, to justify the conclusion arrived at by the majority of this court, its reasoning must rest upon some other basis than that he was merely adjudged to pay costs.

It was contended by the appellee that because the decree of the court below directed the defendant to do something which, if he had neglected to do, he would have been punished for as contempt of court, and incorporated in that decree was the direction to the defendant to pay the costs, and the neglect to comply with the direction of the court in regard to the act to be performed by the defendant was punishable as contempt of court, that the provisions of the decree could not be separated, and, if one part of the direction of the court was punishable as contempt, the neglect to conform with, or perform the duty

enjoined by, another portion of the decree was equally punishable as contempt,—That is to say, decrees against a defendant in a suit in equity are not divisible, but where a defendant is directed to do some particular thing and to pay the costs, he will be punished for contempt of court if he neglect to do either. This would be a novelty in equity proceedings, and an innovation in the practice which would be startling to the judiciary and the bar of the State of Pennsylvania. To say that where a man was guilty of the commission of a private nuisance, or any other injury to another's rights which would be restrained or corrected by the injunction of a court of equity, and he was directed by the decree to right the wrong and to pay the costs, if he complied with the direction of the court commanding him to do the particular thing directed and it was impossible for him to pay the costs, imprisonment would follow, would be such a construction of the law of equity in this state as would revolutionize the practice.

I do not understand the opinion of the majority of this court to rest upon any such reasoning. But they have determined that there is an element of fraud which appears in this case, and therefore under the decisions of the Supreme Court in Church's Appeal, 103 Pa. 263, and Wilson v. Wilson, 142 Pa. 247, attachments for contempt for nonpayment of costs decreed against the defendant, and punishment thereunder, is a proper proceeding.

I do not so read Church's Appeal, upon which rests the decision in the opinion in Wilson v. Wilson.

The Supreme Court say in Church's Appeal: "Where the decree against a party is founded upon his tort, or upon his breach of duty as a trustee, the costs imposed upon him follow his wrongful acts. In an action for a recovery of money founded upon a contract, the costs are of the same nature, and the defendant is not liable to arrest for either debt or costs. S. S. Pierce's Appeal, decided at this term, reported, ante, page 27. But, where the party is liable to arrest to enforce payment of money or the performance of a specific thing, he is also for the costs taxed against him in the judgment or decree."

In the case of Wilson v. Wilson, the Supreme Court say: "It may be conceded that the order for the payment of money, without more, would not subject the party against whom such order is made to the process of attachment. But the decree of

the court below shows upon its face that this is not such a case . . . . It shows that the plaintiff has been guilty of a breach of trust and of actual fraud. Such cases are excepted out of the operation of the act of 1842, and an attachment may be issued for costs; citing Chew's Appeal, 44 Pa. 247; Tome's Appeal, 50 Pa. 285, and Church's Appeal, 103 Pa. 263."

In Pierce's Appeal, which was a proceeding in equity for an account between parties who had been partners in trade, a decree was entered in favor of the plaintiff for a certain amount of money and costs. The court below ordered an attachment to be issued against the defendant for the payment of his costs within sixty days. The costs were not paid, and an attachment was issued against the defendant because of the noncompliance with the decree of the court in regard to the payment of the costs.

Mr. Justice TRUNKEY says: "The act of 1842 applies alike to judgments at law and to decrees in equity, and prohibits arrest in every case upon contract which is not included in the exceptions. Where it applies, an attachment cannot be lawfully issued, for the party shall not be arrested and put to his answer to the satisfaction of the judge or chancellor that he is unable to pay the judgment or decree under pain of imprisonment. Its object being to prevent oppression of debtors, in futherance of that end it should be liberally construed. A creditor is no more entitled to process for arrest of the debtor for costs than for a debt which was the foundation of the suit. As respects remedy, the costs follow the judgment or decree for the recovery of money, and when a statute exempts the defendant's property from levy and sale or his person from arrest to enforce satisfaction of the debt, it also applies to the costs. In an action for a tort, a judgment against the plaintiff for costs is not like damages against the defendant. A judgment for costs is to be considered in the same light as a judgment for debt on contract so far as the exemption law affects the rights of parties. And it makes no difference that the costs accrued in an action of tort: Lane v. Baker, 2 Grant, 424."

A careful examination of these authorities indicates that the line pointed out by them is this—that where a common law remedy is sought upon a condition of facts, a judgment upon which for damages together with costs would be enforced by

capias, equitable relief prayed for upon the same state of facts in a bill in equity and a decree in accordance therewith directing such equitable relief together with the payment of costs, such decree in its entirety will be enforced by attachment. But where the state of facts set out in the bill in equity is not such as could be made the foundation of a common law action, even though the decree entered upon such facts is the direction for the defendant to do a particular thing, together with the payment of costs, the payment of costs will not be enforced by attachment, although the specific performance of the thing directed will be.

And it is this distinction which can clearly be read in all decisions of the Supreme Court upon this question. That is to say that where the plaintiff has his choice of remedies, the one by an action for damages, the judgment upon which would be enforced by capias, the other for equitable relief, and he seeks the court of equity for the equitable relief desired, the court, upon the same state of facts which would have warranted the issuance of a capias at common law, will issue an attachment for contempt if the costs decreed are not paid. To hold otherwise would be injecting into our equity practice great hardships. A party directed to convey real estate by a perfect deed when an imperfect deed has been given, or to remove an encroachment upon a highway by his building or his fence or his steps, or to transfer certain property, or in any other act where specific performance is commanded or directed and it is complied with, and the defendant is unable to pay the costs, that he should be adjudged in contempt of court would be an innovation in our equity practice and a hitherto unexpected power of a chancellor. And while in the interest of justice, the rule as to attachment to compel payment of costs has been established by the Supreme Court, and will commend itself to those interested in the administration of the law, yet it imposes upon the defendant a punishment greater than that by arrest in a common law action upon a capias ad satisfaciendum. A defendant whose person is taken by a capias because of the nonpayment of a judgment, is entitled to relief and discharge upon application for the benefit of the insolvent law. No such privilege is extended to him when he is arrested because of nonpayment of the costs decreed against him in a proceeding in equity, but he is held, by reason of his

contempt of court, until the payment of the money by him, or at the pleasure of the judge making the decree. Because of this increased hardship, the rule in equity should not be carried beyond the rule in a common law action.

In this case the defendant was directed to deliver to the plaintiff a release of his pretended title to certain lands described in the bill in equity, and to surrender a deed executed by Joseph Ross to the said defendant, and that he pay the costs of suit, together with the fees of the examiner and master. This decree was entered on the 1st of October, 1891. On the 17th of November, 1894, a rule was entered on the defendant to show cause why an attachment should not issue for contempt, the petition alleging that the deed had not been delivered and the release had not been executed, as directed by the court in its decree, and the costs of the proceedings had not been paid. To this rule to show cause the defendant answered by tendering a release such as was directed by the court, he at the same time averring that the deed had been lost and that he was too poor to pay the costs; that his poverty was not his fault but was unavoidable. On the 1st of December, 1894, the deed was delivered to the plaintiff in open court.

The decree of the court, therefore, was fully complied with, except the payment of the costs by the defendant,—they were paid however by the plaintiff. Nothing further was done until nine months afterward, on the 21st day of September, 1895, when an order was made by the court directing an attachment to issue against McDonough for contempt because of the non-payment of the costs of suit, and an order was issued adjudging him to be in contempt of court and directing his imprisonment.

This order upon the attachment proceedings is the question which was appealed from and the sole question for consideration before this court. Under the decisions as I interpret them, the sole question for the consideration of this court, therefore, upon this appeal, is—Are the facts as set forth in the bill in equity such as would justify a judgment which would be enforced by a capias, if a judgment had been obtained upon these facts in a common law action?

If upon this state of facts a judgment could have been obtained in a common law action, enforceable by capias, the attachment proceedings are right.

If no such judgment could have been obtained, then the attachment proceedings are wrong.

This is a case, it seems to me, where there could have been no remedy for damages in a common law action. It was an action where relief could be obtained only by an appeal to a court of equity; and, as no judgment could have been entered in a common law action upon this state of facts, which would have been within the exception of the act of 1842, therefore, no attachment will lie to enforce the nonpayment of costs because of this decree in equity.

I am constrained therefore, for the reasons which I have given, to dissent from the views of the majority of the court, and have put in this form my reasons therefor.