**UNITED STATES ex rel. GEISEL v.
CLAUDY, Warden.
Civ. No. 9110.**

United States District Court,
W. D. Pennsylvania.

Feb. 5, 1951.

Gwilym A. Price, Jr., Pittsburgh, Pa.,
for petitioner.

Owen B. McManus, Jr., Asst. Dist. Atty.,
Pittsburgh, Pa., for the Dist. Atty. of
Allegheny County, Pa.

MARSH, District Judge.

M. L. Geisel petitions this court for a
writ of habeas corpus and the right to
proceed in forma pauperis. Prior to this
application he filed petitions in the follow-
ing courts in the following order:

1. For writ of habeas corpus in the
Superior Court of Pennsylvania which
court refused to grant the writ in an illumi-
nating opinion recorded in 1949, 165 Pa.
Super. 41, 68 A.2d 360.

2. For writ of habeas corpus in the Su-
preme Court of Pennsylvania, which de-
nied the writ on the opinion of the Superior
Court. 1622 Misc. Docket.

3. For writ of certiorari in the Supreme Court of the United States which was denied. 338 U.S. 951, 70 S.Ct. 482.

4. For writ of habeas corpus in the Court of Common Pleas of Allegheny County, Pennsylvania, which denied the writ. 2332 April Term, 1950. The application in the Common Pleas differs from the applications in the appellate courts and in this court in that it does not raise a federal question as grounds for relief.

We permitted the petitioner to proceed in forma pauperis and granted a rule to show cause. Notice of the rule was required to be served upon the Attorney General of the Commonwealth of Pennsylvania, and the District Attorney of Indiana County, Pennsylvania. This service was accomplished. No answer was filed by the Attorney General or by the District Attorney of Indiana County.

A hearing was held and testimony of the petitioner was taken. This hearing was attended by an assistant district attorney of the County of Allegheny and counsel for the petitioner appointed by this court.

It appeared that M. L. Geisel was sentenced to the Western State Penitentiary under sentences imposed by the Court of Quarter Sessions of Indiana County on two charges of forgery, said sentences totalling four to ten years beginning June 19, 1941.[1] The petitioner was released on parole December 19, 1945 and recommitted April 18, 1946 for parole violation and forging checks. He escaped prison on August 13, 1946; was captured and sentenced for two or five years imprisonment by the Court of Quarter Sessions of Centre County, Pennsylvania. The sentence for escape was to begin at the expiration of the sentences imposed in Indiana County.

After the hearing, we wrote to the District Attorney of Indiana County to send us the original papers, and also to file an answer. In compliance with this request, the original papers were forwarded to this court but an answer was not filed. The District Attorney stated in this regard that he trusted it would not be necessary to file a formal answer to the petition as the petitioner did not make any allegations in his petition which were capable of answer.

We then undertook to secure from the Prothonotary of the Supreme and the Superior Courts of Pennsylvania the original applications of the petitioner for writs of habeas corpus and the records in those courts. We also wrote to the Prothonotary of the Court of Common Pleas of Indiana County, requesting the application for the writ which petitioner alleged that he filed in said court on April 27, 1948, and which was denied on May 5, 1948. The Prothonotary replied that "I can find no record of same." We then secured from the Prothonotary of the Court of Common Pleas of Allegheny County, Pennsylvania the application for a writ of habeas corpus filed by the petitioner on March 7, 1950, but not mentioned by him in his application here.

In the proceedings had in this court petitioner averred and testified that he had been denied counsel at the time he pleaded guilty and was sentenced by the Quarter Sessions Court of Indiana County. He also averred and testified that he had been denied preliminary hearings before the Justices of the Peace before whom the informations had been made on the two charges of forgery; that the court procedure was unfair; that the then district attorney had imposed upon him in procuring his signature to the plea of guilty on the bills of indictment; that he was refused permission to say anything before the court; that he was not given an opportunity to read the bills of indictment; that the district attorney simply slid out two papers from two envelopes and told him to sign, but he did not know what he was signing; that he was under the impression that he was signing papers relating to a parole violation on a prior conviction for forgery in 1938; that when he got into court the judge

1. No. 59 June Term, 1941—Forgery—2 to 5 years to be computed from June 19, 1941.

No. 62 June Term, 1941—Forgery—2 to 5 years to begin at the expiration of the sentence imposed at No. 59 June Term, 1941.

picked up the two indictments and sentenced him from two to five years on each, same to run consecutively, and before and after doing so, the judge asked no questions. None of this testimony was traversed by answer or by testimony. Petitioner also requested that this court issue subpoenas for various persons including petitioner's brother and wife. It does not appear that these witnesses would corroborate his testimony as to the alleged denial of due process and it is not our province to try the forgery cases on their merits.

The principal question before this court is whether the applicant has been denied due process.

■ In his application to the Superior Court, petitioner tried to convey the impression that he did not know what he was signing when he pleaded guilty, but that he thought that the papers to which he affixed his signature related merely to a violation of parole. His testimony here is to the same effect except he now adds (probably to counter a pointed observation of the Superior Court) that he could not see the words "Indictment" and "Forgery," both typed in capital letters above his signature, because these papers were slipped just partially from their envelopes and just enough to permit him to sign his name. It is true that the words "Indictment" and "Forgery" appear about five inches above his signature, but 1/4 inch above his signature are the words "Defendant pleads guilty," and in view of the prisoner's long experience in criminal court, we do not believe he did not know that he was entering such a plea.

■ The allegedly defective proceedings before the two Justices of the Peace and the fact that warrants of arrest were not issued (warrants were not included among the original papers sent to us) cannot be considered by this court for the reason that applicant did not complain to the Indiana County Courts concerning the alleged discrepancies. Such objections cannot be

raised initially in a habeas corpus proceeding especially when it is not shown that they were raised in the original proceedings before the county court having jurisdiction over these preliminary matters.

■ The charge that applicant was denied counsel cannot be sustained under the evidence. The applicant had been involved in criminal courts for various offenses, including forgery, approximately nine times prior to 1941.[2] The Superior Court stated in its opinion that it did not appear that Geisel asked for counsel, and his applications to this court and to the Superior Court, as well as the Supreme Court, indicate that he had retained counsel to secure his release on bail. He therefore had access to counsel and knew of his right to obtain counsel. As the District Court for the Western District of Pennsylvania stated in United States ex rel. Priester v. Ashe, D.C.W.D.Pa.1949, 86 F.Supp. 673, 674: "Contrary to the views expressed in these petitions, the Supreme Court has not declared that the Pennsylvania courts must provide the defendants in all criminal cases with counsel." [3]

■ The contention that he was denied witnesses is hardly understandable because the prisoner pleaded guilty and there was no trial. The presumption is that the procedure in the county court preliminary to passing sentences upon defendants who have pleaded guilty is regular and that their rights are duly safeguarded by both the court and the district attorney. The burden is on the petitioner to show primary facts, not inferences, which warrant this court's intervention.[4]

After carefully considering the testimony of the applicant and all the circumstances in this case we find that petitioner's rights were safeguarded and due process was observed.

■ Another ground which appears to us to compel a dismissal of this petition is

2. See Geisel v. Ashe, 165 Pa.Super. 41, 68 A.2d 360.

3. See also United States ex rel. Kennedy v. Burke, 3 Cir., 176 F.2d 96; Common-

wealth ex rel. McGlinn v. Smith, 344 Pa. 41, 48; 24 A.2d 1.

4. Darr v. Burford, Warden, 1949, 339 U. S. 200, 218, 70 S.Ct. 587.

that it is not evident that the petitioner *exhausted* the remedies available to him in the *courts* of the State. Exhaustion of state remedies has been established by precedent [5] and statute [6] as a prerequisite to the granting of a writ of habeas corpus by a United States District Court.

In the instant case, the petitioner instituted his first application for a writ of habeas corpus in the Superior Court of Pennsylvania. He did not file an application for a writ of habeas corpus, *alleging denial of due process,* in the Court of Common Pleas of Allegheny County, Pennsylvania. The courts of common pleas of Pennsylvania have jurisdiction to issue writs of habeas corpus which is derived from the common law and statute.[7] It is in the common pleas courts that the petitioner is best able to secure a hearing, present evidence and have testimony taken. He is thus able to build a record from which an appeal can be taken.

It is inherent in the very term "habeas corpus" that the prisoner will be produced before the court.[8] In the Rule to Show Cause granted by the Superior Court, it is stated, "The relator need not be produced in Court." Thus, by failing to pose factual questions in the appropriate court of common pleas, the petitioner lost an opportunity to appear before a judge which is a basic consideration of habeas corpus practice. It is interesting to note that the Supreme Court of Pennsylvania has recently held that the interests of the relator and the Commonwealth "will be best served in this and similar cases by relator making application to the appropriate [lower] court where, with proper petitions, answers and evidence (when indicated), that court will, when required, make necessary findings of fact and conclusions of law, and enter such orders and decrees as it may deem appropriate. Appeal may then be had to either of the appellate courts." [9]

Furthermore, in Darr v. Burford, supra, 339 U.S. at page 204, 70 S.Ct. at page 590, the court stated that the doctrine of comity teaches "that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with *concurrent* powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter [emphasis added]." As a matter of comity, therefore, this court should defer action until the proper Pennsylvania court of common pleas has had an opportunity to pass upon the petitioner's allegations. It is our considered opinion, in the light of the foregoing, that the petitioner has not exhausted all of his state remedies nor has he proved exceptional circumstances which would require a departure from this established rule.

Substantially the same contentions raised in this court were raised by the prisoner in his original writs to the Superior Court and to the Supreme Court. The concurrence of these learned appellate tribunals in denying the writs provides this court with ample assurance that the prisoner has not suffered from a failure of due process.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

June 25, 1948, c. 646, 62 Stat. 967, 28 U.S.C.A. § 2254.

5. Ex parte Hawke, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Darr v. Burford, supra.

6. "State custody; remedies in State courts
   "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has *exhausted* the remedies available in the *courts* of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. [Emphasis added.]

7. Comm. v. Gibbons, 1899, 9 Pa.Super. 527; Act of Feb. 18, 1785, 2 Sm.L. 275, § 1 et seq., 12 P.S. 1871.

8. Johnson v. Eisentrager, 1950, 339 U.S. 763, 70 S.Ct. 936.

9. Com. ex rel. Paylor v. Claudy, 1951, 366 Pa. 282, 77 A.2d 350, 353 (1951).

Therefore, aside from the question of whether the petitioner has exhausted his state remedies, his bid for freedom in our judgment must fail and we conclude as a matter of law that there was no denial of due process. The petition for the writ will be denied.